# Sproul, Appellant, *v.* Standard Plate Glass Company.

*Corporations—Transfer of stock—Purchaser of stock—Statutes—Repeal —Retroactive effect—Acts of April 29, 1874, sec. 7, P. L. 78, and June 24, 1895, P. L. 258.*

The Act of June 24, 1895, P. L. 258, giving an absolute right to a purchaser of pledged stock to have the stock transferred upon the books of the corporation repeals section 7 of the Act of April 29, 1874, P. L. 78, which prescribes that " no certificate shall be transferred so long as the holder thereof is indebted to said company, unless the board of directors shall consent thereto."

The act of June 24, 1895, has no retroactive effect so as to change the right of the parties fixed prior to the passage of the act.

A statute is always interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature.

*Corporations—Act of April 29, 1874, sec. 7, P. L. 78—Lien on stock for embezzlement.*

A claim by a corporation on the stock of one of its shareholders who as an officer had embezzled the funds of the company, is a debt to the company within the meaning of section 7 of the Act of April 29, 1874, P. L. 78, which prescribes that " no certificate shall be transferred so long as the holder thereof is indebted to said company, unless the board of directors shall consent thereto."

*Corporations—Transfer of stock—Lien on stock.*

Where a corporation has a claim against one of its shareholders in excess of the value of all of the shares owned by him, and after notice that some of the shares were pledged, transfers others of the shares, the pledgee has no standing to complain of such transfer, inasmuch as the corporation had the right to apply all of the shares to the payment of its own claim.

*Corporations—Officers—Fraud—Constructive notice—Transfer of shares
·Lien on shares.*

Where an officer of a corporation who is also a shareholder has embezzled the funds of the company, whereby the company has a lien upon his stock, the knowledge of the officer of the fact that some of his shares had been pledged is not constructive notice of that fact to the corporation.

*Corporation—Lien on shares—Statute of limitations.*

A corporation which has a lien upon the shares of a stockholder by reason of the fact that the stockholder had embezzled the funds of the company, does not lose its right to enforce its claim by allowing more than six years to elapse after the discovery of the embezzlement.

*Corporations—Transfer of stock—Act of June 24, 1895, P. L. 258—Mandamus.*

It seems that mandamus is the proper remedy by a purchaser of stock of a corporation to compel a transfer of the stock upon the corporation books.

Argued Oct. 23, 1901.   Appeal, No. 62, Oct. T., 1901, by plaintiff, from judgment of C. P. Butler Co., Dec. T., 1899, No. 54, on case stated in suit of Henry Sproul, trading as Henry Sproul & Company v. Standard Plate Glass Company, a Corporation, James T. Hamilton, President, J. H. Trautman, Treasurer of said Company.   Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Case stated in mandamus proceedings to compel transfer of stock.   Before Greer, P. J.

The case stated was in substance as follows :

1. That the defendant is a manufacturing corporation chartered under the act of April 29, 1874 ; that James T. Hamilton is president and J. H. Trautman is the treasurer thereof.

2. That the Standard Plate Glass Company, so organized, issued, on February 3, 1890, a certificate that

" W. E. Schmertz is entitled to fifty shares of the capital stock of the Standard Plate Glass Company, transferable on the books of the company in person or by attorney upon surrender of this certificate."

3. That on April 7, 1890, William E. Schmertz, assigned and delivered the said certificate to Mark W. Watson, trustee, who held the same as trustee for the Exchange National Bank of

Pittsburg, as collateral security for the payment of $5,000, then loaned by the bank to him, upon a promissory note, which recited the pledge of the stock, and contained a power of sale to be exercised in the event of default in the payment of said note, without notice, either at public or private sale.

At the date of said pledge, Schmertz was not indebted to the Standard Plate Glass Company.

4. That William E. Schmertz afterwards became insolvent and died in the year 1894. He never paid, nor did his representatives ever pay, the indebtedness for which the said stock was pledged, and after public notice the certificate for the said fifty shares was sold at public auction in satisfaction of the debt for which it was pledged, and Henry Sproul became the purchaser thereof.

Sproul demanded a transfer to himself on the books of the defendant of the said fifty shares of stock and the issuance to him of a new certificate therefor, and Mark W. Watson, trustee, offered to make the transfer, and executed and delivered an assignment of the stock and a power of attorney to make the transfer, and Sproul offered to surrender the certificate but the Standard Plate Glass Company declined to make the transfer and to issue to Sproul a new certificate.

6. That on February 3, 1890, Schmertz was the treasurer of the Standard Plate Glass Company, and continued to be its treasurer until January, 1892. That, subsequent to the date of the pledge by him of said fifty shares of stock to the Exchange National Bank, he became generally indebted to the defendant, in a sum in excess of the then value or of the value at any time hitherto of the said fifty shares of stock registered in his name; that this general indebtedness has never been paid. This indebtedness arose from the fraudulent defalcation and embezzlement of Schmertz as treasurer of the defendant company.

7. That, on February 2, 1893, the Exchange National Bank notified the Standard Plate Glass Company that it held as collateral security the certificate issued to William E. Schmertz. In the interim between the pledge of the stock by Schmertz and the giving of notice to the defendant company, Schmertz became indebted to it in the manner above stated. At the time the indebtedness of Schmertz was incurred, it had no notice that Schmertz had pledged the stock to the bank; unless such notice

may be properly inferred from the fact that Schmertz was at the time its treasurer.

Schmertz was the owner of a large number of shares of stock of the defendant company in addition to the fifty shares, and subsequent to the pledge and prior to February 2, 1893, when the formal notice of the pledge was given to the glass company by the bank, the glass company transferred on its books and issued new certificates to assignees or transferees of Schmertz of a large number of shares of stock owned by him, which aggregated in value a sum greater than the amount of his indebtedness to it; but at the time of transfer the glass company had no notice of the pledge by Schmertz to the bank, unless such notice may be inferred from the fact that Schmertz was treasurer of the glass company.

Subsequent to February 2, 1893, the defendant transferred fifty shares of stock owned by Schmertz, to his transferee, which fifty shares were worth less than the amount of his debt. Schmertz's indebtedness exceeds the value at par or otherwise now or at any time heretofore, of both the fifty shares pledged by him to the bank and the fifty shares so transferred after February 2, 1893.

9. For the purposes of this case it is admitted by the defendants that the plaintiff became the purchaser of the stock above mentioned for the purpose of procuring satisfaction of the debt for which it had been pledged, and thereby acquired such title as the bank and its trustee could confer, and that the plaintiff was such owner when this suit was instituted, and that all questions as to the jurisdiction of the court in this form of action are waived.

It is, also, admitted that the board of directors of the defendant has not consented to the transfer of stock to Sproul, but have refused, so to do, because Sproul did not offer to pay the indebtedness owing by Schmertz to the defendant, they claiming that, under the acts of assembly, it was and is entitled to a lien upon the stock to secure the payment of the indebtedness due to it in priority to the rights of the bank and Sproul.

If the court be of opinion that the plaintiff, Henry Sproul, doing business as H. Sproul & Company, is entitled to a transfer of the said fifty shares of stock of the defendant, the Standard Plate Glass Company, upon its books and to a new certi-

ficate therefor, then judgment to be entered for the plaintiff awarding a writ of peremptory mandamus in this behalf; but if not, then judgment to be entered for the defendants.  The costs to follow the judgment, and either party reserving the right to sue out a writ of appeal therein to the Supreme Court.

The court in opinion by GREER, P. J., entered judgment for defendant on case stated.

*Error assigned* was in entering judgment on case stated.

*John S. Wendt,* with him *R. P. Scott, D. T. Watson* and *Johns McCleave,* for appellant.—The right of the defendant company to refuse to transfer stock of stockholders indebted to it has been repealed by the Act of June 24, 1895, P. L. 258: Best v. Baumgardner, 122 Pa. 17.

It was competent for the legislature to pass the act of 1895 repealing the statutory right given to corporations incorporated under the act of 1874, to refuse to transfer certificates of stock so long as the holders were indebted to said companies, and thereby, thereafter prevent such corporations from enforcing the lien given by the provision of the act of 1874 by refusing to transfer stock of holders indebted generally to such companies : Merchants' Bank v. Shouse, 102 Pa. 492; National Bank of the Republic v. Rochester Tumbler Co., 172 Pa. 614 ; Presbyterian Congregation v. Carlisle Bank, 5 Pa. 347.

In granting its charter to the defendant company, the legislature has reserved the power to alter, revoke or annul it in the manner and to the extent done by the act of 1895 : New York, etc., Railroad Co. v. Bristol, 151 U. S. 567 ; Close v. Glenwood Cemetery, 107 U. S. 466 ; Spring Valley Water Works v. Schottler, 110 U. S. 347 ; Pennsylvania College Cases, 13 Wall. 190; Tomlinson v. Jessup, 15 Wall. 454; Commonwealth v. Fayette County R. R. Co., 55 Pa. 452; Zimmerman v. Perkiomen, etc., Turnpike Co., 81½ Pa. 96 ; Greenwood v. Union Freight R. R. Co., 105 U. S. 13 ; Erie, etc., R. R. Co. v. Casey, 26 Pa. 287 ; Com. v. Essex Co., 13 Gray, 253 ; Miller v. New York, etc., R. R. Co., 21 Barb. 517.

Inasmuch as the act of 1874 merely provided a collateral remedy in the nature of a lien for the collection of debts due corporations organized under the act of 1874, it was competent

for the legislature to repeal the law giving such lien as was done by the act of 1895, and this act is valid even though it deprive the corporation of an existing lien : Huntzinger v. Brock, 3 Grant Cases, 243 ; Evans v. Montgomery, 4 W. &. S. 218 ; Tennessee v. Sneed, 96 U. S. 74 ; Chadwick v. Moore, 8 W. & S. 49 ; Curtis v. Whitney, - 13 Wall. 69 ; Campbell v. Iron Silver Mining Co., 83 Fed. Repr. 643.

A lien created by mere act of legislation has none of the elements or properties of a contract, and, therefore, may be destroyed by an act of legislation : Gimbel v. Stolte, 59 Ind. 446 ; Watson v. New York Central R. R. Co., 47 N. Y. 157 ; Moore v. Holland, 16 So. C. 24 ; Best v. Baumgardner, 122 Pa. 17.

The lien provided by the act of 1874 did not extend to a claim of the corporation based on an embezzlement of one of its officers : Hotchkiss v. Union Nat. Bank, 68 Fed. Repr. 80.

However, assuming that a debt founded upon a positive malfeasance—a tort—of an officer of the corporation is a debt within the meaning of the general corporation act for which the corporation had a lien upon its officer's stock, yet such debt arising from a tort committed against the corporation, is not a contract within the meaning of the constitutional provisions against impairing the obligation of contracts, and, therefore, it was competent for the legislature to abolish such lien : Louisiana v. Mayor of New Orleans, 109 U. S. 285 ; 3 Superior Ct. Rep. 211 ; Freeland v. Williams, 131 U. S. 405 ; 9 Superior Ct. Rep. 763 ; McAfee v. Covington, 71 Ga. 272 ; Parker v. Savage & Hogam, 6 Lea (74 Tenn.), 406 ; Peerce v. Kitzmiller, 19 W. Va. 564 ; City of Sherman v. Langham, 39 L. R. A. 258 ; Morley v. Lake Shore, etc., Ry. Co., 146 U. S. 162 ; 13 Superior Ct. Rep. 54 ; Chase v. Curtis, 113 U. S. 452 ; 5 Superior Ct. Rep. 554 ; Garrison v. New York, 21 Wall. 203 ; High on Ext. Leg. Rem. sec. 20 ; People v. Mayor of New York, 10 Wend. 395 ; Com. v. Commissioners of Allegheny, 32 Pa. 218 ; Overseers of Porter Township v. Overseers of Jersey Shore, 82 Pa. 275 ; High on Ext. Leg. Rem. sec. 9 ; High on Ext. Leg. Rem. sec. 10 ; Com. v. Rosseter, 2 Binney, 360 ; Boro. of Easton v. Lehigh Water Co., 97 Pa. 554 ; Kaine v. Com., 101 Pa. 494 ; Rex v. Barker, 3 Burrows, 1265.

*T. C. Campbell*, with him *C. Walker* and *W. D. Brandon*, for

appellee.—The indebtedness referred to in the act of 1874, for which a lien is given to the corporation, includes all kinds of indebtedness, and is not restricted to indebtedness growing out of the original subscription or subsequent calls thereon: National Bank of the Republic v. Rochester Tumbler Co., 172 Pa. 614.

The act of 1895 is not retrospective : Short's Est., 16 Pa. 63 ; Bedford v. Shilling, 4 S. & R. 401 ; Dannaker v. Riley, 14 Pa. 435 ; Neff's App., 21 Pa. 243 ; Becker's App., 27 Pa. 52 ; Dewart v. Purdy, 29 Pa. 113 ; Kenyon v. Stewart, 44 Pa. 179 ; Taylor v. Mitchell, 57 Pa. 209 ; Steckel's App., 64 Pa. 493 ; Kille v. Reading Iron Works, 134 Pa. 225.

When the contract involved in this case was made, it was made subject to the act of 1874 which provided that the corporation should have a lien for any indebtedness incurred by Schmertz to the corporation, and also made subject to the further qualification that the legislature might amend that act, so as not, however, to impair the obligation of any contract, or do injustice to the corporators : Holyoke Water Power Co. v. Lyman, 82 U. S. 500 ; New York, etc., R. R. Co. v. Bristol, 151 U. S. 556 ; 14 Superior Ct. Rep. 437 ; Union Pacific R. R. Co. v. U. S., 99 U. S. 700 ; Detroit v. Detroit, etc., Plank Road Co., 43 Michigan, 140 ; 6 N. W. Repr. 275.

OPINION BY MR. JUSTICE MITCHELL, January 6, 1902 :

The Act of June 24, 1895, P. L. 258, provides that upon a sale of stock in any company incorporated under the laws of this commonwealth "in satisfaction of any debt for which it is pledged, the purchaser shall have the right to compel a transfer of such stock upon the corporation books and the delivery of a proper certificate therefor." Under this provision mandamus would seem prima facie to be an appropriate remedy to enforce a transfer, but as all objections to the form of the action are expressly waived in the present case stated we need not consider the question further.

The Act of April 29, 1874, sec. 7, P. L. 78, after providing for the issue of certificates of stock to the persons entitled to them, transferable in accordance with by-laws etc., prescribed that "no certificate shall be transferred so long as the holder thereof is indebted to said company, unless the board of direct-

ors shall consent thereto." Without giving the company an express lien this provision gave what was practically an equivalent in the negative power to refuse a transfer. An express lien could be waived or released and so this potential lien could be waived by consent to transfer, thus substantially producing the same effect.

The Act of June 24, 1895, P. L. 258, provided for the transfer of certificates of stock at the pleasure of the holder as the by-laws may prescribe, "subject to all payments due or to become due thereon," and then contained the provision in regard to purchasers at sales in satisfaction of debt, already quoted. The only repealing clause is the general one of all laws inconsistent therewith, but as the act of 1895 is upon the same subject and in large part in the same words as section 7 of the act of 1874, but gives an absolute right of transfer inconsistent with the necessity of consent by the board of directors, this requirement of the act of 1874 is necessarily repealed.

In the present case the indebtedness of Schmertz to the company, appellee, arose before the passage of the act of 1895, and before notice and demand by the bank as pledgee. We have the question therefore whether the act took away the company's lien or gave appellant as purchaser a superior right. This raises first the consideration whether or not that provision of it is retroactive. There is no express provision to that effect nor is any such intent apparent in the language used. It is the ordinary legislative language in the future tense, certificates "shall be transferable," and the purchaser "shall have the right to compel a transfer," etc. The general rule was forcibly stated by Sharswood, J., in Taylor v. Mitchell, 57 Pa. 209. "There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature."

The rights of the parties here were fixed before the passage of the act of 1895. Whether those rights were such as affected the obligation of the contract, or concerned the remedy only, which the legislature might constitutionally change, is not material. The present inquiry is not what the legislature might do but what it has done. As already said there is noth-

ing apparent in the act to take it out of the usual rule of construction that it is prospective only.   It is therefore not necessary to consider the question so elaborately argued in the court below and here, of its constitutionality.

The claim of the defendant company against Schmertz arose out of an embezzlement by him as its officer.   It was held in National Bank of the Republic v. Rochester Tumbler Co., 172 Pa. 614, that the statute includes all kinds of indebtedness, and is not restricted to debt arising out of the subscription or calls on the stock.   Though Schmertz's defalcation was a tort, yet the claim against him was based on a breach of his contract as an officer, and was liquidated before appellant's demand for a transfer of the shares.   It was therefore clearly an indebtedness within the meaning of the statute.   How far an unliquidated claim for damages for a pure tort may come within the act we need not consider.

The fact that the appellee transferred other shares on the request of Schmertz or his assignees, some of them after notice of the pledge to the bank, does not affect appellee's present rights inasmuch as it is admitted that its claim is greater than the value then or at any time since, of the present shares and those transferred after notice.   Such transfers did appellant no harm, since even if they had not been made the appellee's debt having precedence would leave nothing for appellant.   Had the fact been otherwise, and if the appellee with a lien on sufficient shares to satisfy its claim without resort to those now in controversy, had after notice of appellant's rights, transferred the other shares, a different question would be presented.   The notice which is important in this connection is the express notice received from the bank in February, 1893.   As Schmertz was acting in his own interest in fraud of the appellee, his knowledge of the pledge to the bank was not constructive notice to the appellee : Gunster v. Scranton Illuminating, Heat and Power Co., 181 Pa. 327.

The appellee allowed more than six years to elapse after the discovery of Schmertz's defalcation, without proceeding to enforce its claim and by so doing prima facie it barred its right of action.   But it did not thereby lose its hold on the shares standing in his name.   The lien it had on them was in the nature of collateral security and was without limit as to time.

It could therefore be enforced although the right of action at law on the debt itself had expired.

Judgment affirmed.