# Old Forge School District.

*Statutes—Construction—Retroactive effect—School law—Act of February 5, 1903, P. L. 4—Boroughs—Townships.*

A statute is always to be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature.

The Act of February 5, 1903, P. L. 4, entitled, "An act relating to school districts in townships and boroughs erected therefrom" is not to be given a retroactive effect so as to apply to the past division of a township school district by the erection of a borough out of a portion of the territory, thereby abolishing the two school districts that had existed for over three years, restoring the original district, and incidentally annulling a judgment which one had obtained against the other.

Argued Jan. 13, 1905.   Appeal, No. 9, Jan. T., 1905, from order of Q. S. Lackawanna Co., Feb. T., 1901, No. 356, making absolute rule for mandamus execution in reapportionment of the Indebtedness of Old Forge School District.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Rule for mandamus execution.

EDWARDS, P. J., filed the following opinion :

In order to understand the present status of this case it is necessary to refer to some facts of a preliminary nature.

1. In May, 1899, by a decree of the court of quarter sessions of Lackawanna county, the borough of Old Forge was created out of the greater portion of Old Forge township.   This resulted, by operation of law, in the formation of the new school district of Old Forge borough, leaving the balance of the township a school district by itself: In re Abington School District, 4 W. N. C. 247 ; Old Forge School District's Indebtedness, 22 Pa. Superior Ct. 239.

2. A petition was filed in January, 1901, under the Act of April 11, 1862, P. L. 471, praying for an adjustment and apportionment of the property and indebtedness of the old school district among the two school districts—the borough and township school districts.

A commissioner was appointed to report the facts.   His report was filed and excepted to.   On August 11, 1902, the exceptions were dismissed and the report of the commissioner confirmed.   In our opinion dismissing the exceptions we directed counsel to prepare a final decree, in accordance with the provisions of the act of 1862, and submit the same to the court. The case was then appealed to the Superior Court.   Counsel, having overlooked the preparation of the final decree, asked leave of court to file the same.   This decree was entered of record on January 5, 1903, nunc pro tunc as of August 11, 1902.

The amount decreed to be paid by the Old Forge school district to the Old Forge township school district was $3,026.64. For further facts and law we refer to the case of Old Forge School District's Indebtedness, supra, where will be found the opinion of the court below, the opinion of the Superior Court and the supplementary opinion of Judge SMITH.

3. The Old Forge borough school district, having been defeated in its contention in the court below and in the Superior Court, recourse was had to the legislature of 1903, the result being the act of February 5, 1903, "relating to school districts in townships and boroughs erected therefrom." We quote this act in full in this place :

" Section 1. Be it enacted, etc., That whenever a borough has been or shall be erected out of a portion of a township, leaving the remaining portion of the township without a schoolhouse, and with less than ten resident freeholders, and less than twenty-five resident children between the ages of six and sixteen years; then, and in such case, the creation of such borough shall not cause a division of the school district of the township out of which such borough was formed; but the school district, as it existed in such township before the creation of such borough shall be and remain as heretofore : Provided, however, that whenever it shall be made to appear to the court of common pleas of the proper county, by petition of at least twenty freeholders of such undivided school district, and proper hearing, that the portion of such school district outside the borough has at least ten resident freeholders and twenty-five children as aforesaid ; Then the said court, in its discretion, may decree that said school district shall be divided into two districts, one consisting of the territory within such borough, and the other to consist of the part of the original township territory not included within such borough lines.

" Section 2. All laws or parts of laws, whether general or special, in conflict with this act are hereby repealed."

The record will not permit us to state that this act of assembly was enacted at the instance of the borough school district, because there is no direct evidence on this question ; nevertheless, it seems to us that if the counsel for the school district had been requested to prepare a retroactive act specially applicable to the case at bar, and calculated to affect the school districts of Old Forge borough and township, out of all the school districts in the state, counsel could not have accomplished the purpose more successfully than has been done by the act in question, subject, of course, to the possibilities that such an act of assembly might be special or local legislation and therefore unconstitutional.

It is claimed by one side to the present controversy that the act wipes out the township school district and annuls the final decree of January 5, 1903. On the other side it is claimed that the act is unconstitutional because, (1) its title is defective ; (2) it impairs the obligation of contract; (3) it is special or local legislation.

The act may be unconstitutional for any or all of these reasons, but we do not consider that we are called upon to decide this question in the present case. The final decree was entered January 5, 1903, and whether or no the order entering the decree nunc pro tunc as of August 11, 1902, is efficacious is immaterial, because the act was not passed until February 5, 1903. And it is well settled law that acts of assembly must be construed to act prospectively when they would affect vested rights by a retroactive construction. So far as the present case is concerned the act in question must be construed to act prospectively. It cannot affect vested rights as they existed in August, 1902, or in January, 1903. The final decree of the court is in the nature of a contract and cannot be impaired by subsequent legislation. The foregoing discussion brings us to the subject-matter of the rule now before us. The rule as granted is to show cause why judgment should not be entered upon the decree and an execution awarded. Probably the more correct form of the rule would be " to show cause why execution should not issue." The decree of January 5, 1903, was in the nature of a judgment. It was adjudged and decreed that one school district pay to the other a certain sum of money. That was the judgment of the court. It was so entered of record. The eleventh section of the Act of 1862, P. L. 471, provides as follows : " And any sum thus decreed to be due by any district, to any district or individual, shall be entered in the nature of a judgment, against the same, and shall be subject to execution in the manner prescribed by the twenty-first section of the general common school law of May 8, 1854." It cannot be questioned that the decree of January 5, 1903, had the force and effect of a judgment. But it is not necessary to waste argument over the exact form of the relief prayed for. We make the rule absolute in the form it is before us, and we further order and decree that writ of execution issue as prayed for against the Old Forge borough

school district, commanding the directors and treasurer of said school district to cause the amount of the said judgment as stated in the decree of January 5, 1903, to wit: the sum of $3,026.64, with interest and costs, to be paid to the plaintiff out of any moneys unappropriated of such district, or if there be no such money, then out of the first moneys that shall be received for the use of such district, as provided by law.

*Error assigned* was the order of the court.

*I. H. Burns* and *J. E. Watkins*, with them *A. G. Rutherford*, for appellant.—There is no semblance of a contract between the state and a school district, as there is between a state and a private corporation. The school districts are agencies of the state, and created to perform certain educational functions. They can be discharged at will: Philadelphia v. Fox, 64 Pa. 169; Gas & Water Co. v. Downington Borough, 175 Pa. 341.

Retrospective laws, unless ex post facto, or impairing the obligation of contracts, do not fall within the prohibition against such laws contained in the constitution of the United States. Hence, within the scope of legislative power, an act will, and must, be given retroactive efficiency, where such an intention clearly appears: Endlich on Interpretation of Statutes, sec. 283.

*John M. Harris*, with him *Willard, Warren & Knapp*, for appellee.—A right is vested when it has already become a title, legal or equitable, and the legislature has no power to divest titles or equitable rights previously vested, nor to vest them in another: Indiana County v. Agricultural Society, 85 Pa. 357; Philadelphia v. Wright, 100 Pa. 235.

Whenever any specific sum is adjudged to be due from the defendant to the plaintiff, in an action or suit at law, this is a contract of the highest nature, being established by the sentence of a court of judicature: 2 Blackstone, 465; Louisiana v. New Orleans, 109 U. S. 285 (3 Sup. Ct. Repr. 211).

The act of February 5, 1903, is retrospective, and in the present case unconstitutional: Greenough v. Greenough, 11 Pa. 489; Case of Supervisors of Election, 114 Mass. 247;

De Chastellux v. Fairchild, 15 Pa. 18; Commonwealth v. Warwick, 172 Pa. 140; Lefever v. Witmer, 10 Pa. 505.

A law which affects past transactions and vested rights is retrospective and unconstitutional: Kennebec Purchase v. Laboree, 2 Greenl. (Me.) 275.

OPINION BY RICE, P. J., March 14, 1905:

This is an appeal from an order awarding a mandamus execution for the enforcement of a judgment, which judgment was entered in the quarter sessions on January 5, 1903, nunc pro tunc as of August 11, 1902, and affirmed by this court on appeal on February 11, 1903. The proceedings leading up to the order now appealed from are so fully recited in the opinion of the learned president of the quarter sessions, as to render it unnecessary for us to go over the ground again. See also Old Forge School District's Indebtedness, 22 Pa. Superior Ct. 239. The appellant's case, as now presented, rests wholly on the Act of February 5, 1903, P. L. 4, entitled " an act relating to school districts in townships and boroughs erected therefrom." It is claimed in effect that the act, eo instanti, abolished the two school districts that had existed for three years and more, restored the original district, and incidentally annulled the judgment which one had obtained against the other. But does the act apply to the past division of a township school district, by the erection of a borough out of a portion of the territory? Unquestionably, constitutional objections being out of the way, the legislature may pass retroactive laws. But the construction of statutes so as to give them a retroactive effect is not favored, and for good reasons. In general a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention : Endlich on Interpretation of Statutes, sec. 271. " There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all

question as to the intention of the legislature:" Per SHARS-
WOOD, J., in Taylor v. Mitchell, 57 Pa. 209. This forcible
statement of the general rule has been approved in many sub-
sequent cases, one of the latest of which is Sproul v. Standard
Plate Glass Co., 201 Pa. 103. The opening words of the act of
1903 are comprehensive enough to include the erection of a bor-
ough out of a portion of a township, before as well as after the
date of the enactment. But when we come to that part of the
act which declares the effect of such action we find the language
in the future tense, "the creation of such borough shall not
cause a division of the school district,"—words wholly unfitted
to express the idea of the annulment of a division that had al-
ready taken place. It is quite clear that this clause is not
retrospective in its operation and does not fit the present case.
The succeeding clause, " but the school district, as it existed
in such township before the creation of such borough shall be
and remain as heretofore," is ambiguous. We do not say that
the words are not susceptible of a retroactive construction, but
we think the more natural and apparent meaning of them is
that the status quo shall not be changed, not that the previous
division of such school district shall be obliterated and the dis-
trict restored to its former condition. This interpretation is
aided by the language of the proviso, which speaks only of
"such undivided school district" and makes no allusion to a
school district formed by the merger or consolidation of two
school districts. Moreover, how are we to know that the con-
ditions prescribed by the act existed in the school district of
Old Forge township at the date of the enactment? The record
does not show the fact, nor is it to be judicially presumed from
anything the record does show. It seems reasonable to suppose
that if the legislature had contemplated the consolidation of
school districts it would have provided a mode for the direct
determination of the question once for all, so that the citizens
of the territory affected and the public generally would know
with certainty whether the status of the districts had been
changed and would not have left that matter open to contro-
versy in any collateral proceeding that might arise. This con-
sideration, while not conclusive, has a bearing upon the inquiry
as to the intention of the legislature and is worthy of notice.

But assuming that the foregoing construction of the act is

erroneous, what follows? In order to sustain the appellant's contention we must construe the act to mean that whenever prior to its enactment, no matter how long, a borough shall have been created out of a portion of a township, and a new school district shall have been created thereby, and at the time the borough was created the remaining portion of the township was left without a school house, and with less than ten resident freeholders, and less than twenty-five resident children between the ages of six and sixteen, the two school districts thus created shall, from the date of the enactment of the statute, constitute a single district. The power of the legislature to classify school districts, and to enact laws suitable to each class is not now open to question: In re Sugar Notch Borough, 192 Pa. 349 ; Commonwealth v. Gilligan, 195 Pa. 504. This power, however, is not without limitation, but, as was impliedly held in Seabolt v. Commissioners of Northumberland County, 187 Pa. 318, is subject to judicial revision, "so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition," against local and special legislation. Having regard to this qualification of the general doctrine enunciated in the cases cited and kindred cases, it is difficult to see how a classification of school districts, for the purpose of consolidation, founded on characteristics or conditions which at some former time may have distinguished them from other school districts, but which are not in their nature permanent, could be sustained.

In any view that may be taken of the case we think the learned judge below was clearly right in refusing to give the act the effect of abolishing the two school districts that had existed for three years and more, restoring the original district and incidently annulling the judgment which one had obtained against the other.

Order and decree affirmed at the appellant's cost.