## Carson et al., Liquidating Trustees, v. Tompkins et al., Liquidating Trustees

*John D. Gresimer*, of *Rydesky & Gresimer*, for plaintiffs.

*Edwin W. Tompkins*, for defendants.

HIPPLE, P. J., April 7, 1941.—Plaintiffs, by their bill in equity filed July 14, 1939, asked for an accounting by

defendants as liquidating trustees of Cameron County Bank and that defendants be required to pay plaintiffs whatever amount should be found due upon such accounting. Subsequently, on April 25, 1940, and May 31, 1940, the parties, by their respective counsel, filed stipulations in the nature of a case stated agreeing to the facts involved in the proceeding.

From the admissions in the pleadings and the stipulations filed by the parties, the chancellor makes the following

### Findings of fact

1. Plaintiffs, residents of Lycoming County, Pa., are liquidating trustees of the non-liquidated and depreciated assets of Lycoming Trust Company, formerly of Williamsport, Lycoming County, Pa.

2. Defendants are the liquidating trustees of the unconsumed assets of Cameron County Bank and are citizens of Cameron County, Pa.

3. On July 17, 1918, Josiah Howard, now deceased, who was then a resident of Emporium, Cameron County, Pa., was the owner of 50 shares of the capital stock of Cameron County Bank, represented by certificate no. 69, dated March 27, 1917.

4. On January 24, 1919, Josiah Howard was likewise the owner of 10 shares of the capital stock of Cameron County Bank, represented by certificate no. 68, dated March 27, 1917.

5. The stock owned by Josiah Howard in the Cameron County Bank and represented by certificates nos. 68 and 69 is registered in the stock book or register records of Cameron County Bank in the name of Josiah Howard.

6. On or about July 17, 1918, Josiah Howard borrowed from West Branch National Bank of Williamsport, Pa., a certain sum of money, to evidence which he executed and gave to West Branch National Bank a collateral note and deposited as collateral security therefor stock certificate no. 69 for 50 shares of the capital stock of Cameron County Bank, executing and delivering at the

same time an assignment of the stock certificate, endorsed thereon in blank, together with a separate power of attorney properly executed accompanying the same, and delivered the stock certificate with the assignment thereof and the power of attorney to West Branch National Bank. The collateral note executed by Josiah Howard was similar in form to exhibit "A" attached to plaintiffs' bill, and authorized the payee to sell the stock at public or private sale, to rehypothecate the stock, to register the same in its name, and to appropriate the dividends and interest paid to payee to the payment of the obligation secured thereby.

7. On or about January 24, 1919, Josiah Howard borrowed from said West Branch National Bank a certain sum of money, to evidence which he executed and gave to West Branch National Bank a collateral note and deposited as collateral security therefor stock certificate no. 68 for 10 shares of the capital stock of Cameron County Bank, executing and delivering at the same time an assignment of the stock certificate, endorsed thereon in blank, together with a separate power of attorney properly executed, accompanying the same, and delivered the stock certificate with the assignment thereof and the power of attorney to West Branch National Bank. The collateral note executed by Josiah Howard was similar in form to exhibit "A" attached to plaintiffs' bill and authorized the payee to sell the stock at public or private sale, to rehypothecate the stock, to register the same in its name, and to appropriate the dividends and interest paid to payee to the payment of the obligation secured thereby.

8. On January 7, 1927, West Branch National Bank merged with Lycoming National Bank and Northern Central Trust Company under the name of Lycoming Trust Company.

The two collateral notes referred to in findings of fact 6 and 7 remained unpaid until they together amounted to $6,200. On January 16, 1929, the obligations were

merged into one collateral note, executed by Josiah Howard, a copy thereof being attached to the bill as exhibit "A".

9. On January 1, 1931, the collateral note and the collateral deposited therewith were transferred and assigned to Lycoming Securities Corporation, and as of September 30, 1931, the amount due thereon was reduced to $5,262.03.

10. Lycoming Securities Corporation was subsequently dissolved and all its assets, including the collateral note of Josiah Howard dated January 16, 1929, with the stock certificates representing stock of the Cameron County Bank deposited as collateral therewith, were duly transferred to plaintiffs as liquidating trustees.

11. On September 10, 1926, John T. Howard was the owner of seven shares of the capital stock of Cameron County Bank, represented by certificate no. 102, dated September 14, 1920.

12. The stock owned by John T. Howard in the Cameron County Bank and represented by certificate no. 102 is registered in the stock book or register records of Cameron County Bank in the name of John T. Howard.

13. On or about September 10, 1926, John T. Howard borrowed from Susquehanna Trust Company of Williamsport, Pa., a certain sum of money, for which he gave a collateral note and deposited as part collateral security therefor stock certificate no. 102 for seven shares of the capital stock of Cameron County Bank, executing and delivering at the same time an assignment of the stock certificate, endorsed thereon in blank, together with a separate power of attorney properly executed, accompanying the same, and delivered the stock certificate with the assignment thereof and the power of attorney to Susquehanna Trust Company. The collateral note executed by John T. Howard was similar in form to exhibit "B" attached to plaintiffs' bill, and authorized the payee to sell the same at public or private sale and to rehypothecate the stock.

14. The obligation of John T. Howard continued until October 16, 1929, at which time it amounted to the principal sum of $1,900, when it was renewed, a copy thereof being attached to plaintiffs' bill as exhibit "B". The obligation was subsequently reduced as of June 27, 1930, to the sum of $1,469.86.

15. On January 1, 1931, Susquehanna Trust Company merged with Lycoming Trust Company under the name of Lycoming Trust Company.

16. On December 21, 1933, the obligation of John T. Howard and the collateral deposited therewith were transferred to plaintiffs as liquidating trustees of Lycoming Trust Company.

17. The stock of Cameron County Bank held by Josiah Howard and John T. Howard was issued to them respectively as full-paid and non-assessable, except for double liability as stockholders under the banking laws of the Commonwealth of Pennsylvania.

18. No part of the balance of $5,262.03, or interest thereon, evidenced by the note executed by Josiah Howard dated January 16, 1929, has been paid to Lycoming Trust Company, or plaintiffs, or anyone for them or in their behalf, nor has any part of the balance of $1,469.86, or any interest thereon, evidenced by the note of John T. Howard, dated October 16, 1929, been paid to Susquehanna Trust Company, or plaintiffs, or anyone in their behalf.

19. Plaintiffs hold the certificates of stock issued to Josiah Howard and John T. Howard, aggregating 67 shares, as pledgees and as bona fide holders thereof for value.

20. Cameron County Bank was a bank of discount and deposit organized under the Act of May 13, 1876, P. L. 161, letters patent having been issued to it December 20, 1915.

21. By agreement dated June 27, 1927, between First National Bank of Emporium, Pa., and Cameron County Bank, it was provided that Cameron County Bank should

discontinue business, transfer its accounts to the First National Bank of Emporium, Pa., which undertook to pay the liabilities of Cameron County Bank, except to its stockholders, and if such liabilities were paid within three years from June 27, 1927, or an additional two years as provided by said agreement, First National Bank should return all unconsumed assets of Cameron County Bank to defendants as liquidating trustees of Cameron County Bank. First National Bank exercised its right to renew the agreement for an additional period of two years from June 27, 1930.

22. First National Bank of Emporium, Pa., fulfilled the terms of this agreement, completed its duties and obligations thereunder by June 28, 1938, and by order of the Court of Common Pleas of Cameron County to no. 30, January term, 1934, all of the unconsumed assets of Cameron County Bank were delivered by First National Bank to defendants as liquidating trustees of Cameron County Bank.

These assets consisted of real estate in and about Emporium Borough and other assets. Since January 21, 1935, defendants as such liquidating trustees have administered the assets of Cameron County Bank delivered to them, and have received rents, issues, and profits from the real estate.

23. On August 10, 1937, plaintiffs notified defendants of the fact that plaintiffs held the certificates of stock of Cameron County Bank issued to Josiah Howard and John T. Howard as pledgees.

24. Subsequent to January 24, 1919, Josiah Howard became obligated to Cameron County Bank in the sum of $3,000, which obligation is still unpaid and owing.

25. Subsequent to September 10, 1926, John T. Howard became obligated to Cameron County Bank in the sum of $6,695, which obligation is still unpaid and owing to Cameron County Bank.

26. Defendants, as liquidating trustees of Cameron County Bank, have declared a dividend of $15 on each

share of the outstanding stock of said bank, based upon the number of shares outstanding and not upon the par value thereof.

## Discussion

The question submitted for determination is: Can the obligations due by Josiah Howard and John T. Howard to Cameron County Bank be set off by the bank against any dividends to which the plaintiffs-pledgees of the stock of Josiah Howard and John T. Howard would otherwise be entitled?

The agreed stipulations of facts do not definitely state that the dividend of $15 upon the outstanding stock of Cameron County Bank declared by defendants, as liquidating trustees, represents a distribution of liquidated assets solely to stockholders, and not to creditors, except for the inference to be drawn from paragraph 5 "Additional Facts of Agreement in Case Stated", which sets forth that "The dividend of $15 per share set forth in paragraph 33 of said case stated is a dividend to stockholders of said Cameron County Bank," but the matter was submitted to the court upon the theory that the dividends represent a distribution of assets to stockholders, and therefore the court will consider such distribution to be one of assets only, since the obligations of Cameron County Bank were paid by First National Bank of Emporium under the agreement made between the two institutions. This is an inference fairly deducible from the facts agreed upon.

The bank was incorporated under the Act of May 13, 1876, P. L. 161. The latter portion of section 21 of the act contains two provisions:

(1) ". . . and no shareholder shall sell or transfer any shares in the capital stock held in his own right so long as he shall be liable, either as principal debtor, surety or otherwise, to the corporation, for any debt, without the consent of a majority of the directors, [2] nor shall such shareholder, when liable to the corporation for any debt that is overdue and unpaid, be entitled to receive any

dividend, interest or profit on such shares as long as such liabilities shall so continue overdue, but all such dividends, interest and profits shall be retained by such corporation to discharge such liabilities."

The prohibition against the sale or transfer of any shares of the capital stock by a stockholder when indebted to the bank was repealed by the Act of June 24, 1895, P. L. 258, the title of which is stated as follows:

"Relating to and regulating the issue and transfer of certificates of stock by companies incorporated under the laws of this Commonwealth."

As to manufacturing corporations the Supreme Court, in Sproul v. Standard Plate Glass Co., 201 Pa. 103, held that the Act of June 24, 1895, P. L. 258, repealed the Act of April 29, 1874, P. L. 73, insofar as the right to sell and transfer certificates of stock was affected. This was followed by the case of Bank of Millvale v. Ohio Valley Bank, 234 Pa. 1, 5, holding that the purpose of the Act of June 24, 1895, ". . . was to facilitate the transfer of stock, not only to a purchaser in ordinary course, but to a pledgee and to a purchaser at a sale had upon a pledge given in security of a debt. It gives 'an absolute right of sale' inconsistent with the right of the bank to refuse a transfer or to retain the stock until the dividends, interest and profit shall discharge an indebtedness due by the stockholder, and the provisions of sec. 21 of the act of 1876 are necessarily repealed."

That case merely passed upon the right of a purchaser of shares of stock deposited as security for a loan to have the shares transferred to its name notwithstanding the pledgor was indebted to the bank which had issued the stock to him and, in view of the repeal of the portion of section 21 of the Act of 1876 requiring the consent of a majority of the directors before a shareholder could sell or transfer any shares when indebted to the bank, it was held that the purchaser of shares pledged as security for a loan could require the bank to transfer the shares on its books to the purchaser and issue a new certificate therefor.

However, in a well-considered opinion, with which we are in entire accord, in Shughart, Admr., v. Carlisle Deposit Bank & Trust Co., 38 D. & C. 498, 500, President Judge Reese held that section 21 of the Banking Act of May 13, 1876, P. L. 161, substantially reënacted in the Banking Code of May 15, 1933, P. L. 624, sec. 704, gave to banks a lien upon dividends declared on its shares, to enforce payment of an indebtedness due it by the shareholder; that while the Act of June 24, 1895, P. L. 258, removed the lien on the shares given by the earlier Act of May 13, 1876, P. L. 161, it in no way removed the lien on dividends; and that ". . . when decedent's indebtedness was incurred the Act of 1876 was in force and under section 21 thereof a lien on dividends was given the bank, which lien is continued by the Act of 1933. The bank has, therefore, . . . a statutory lien or right under which it could retain the dividends on decedent's stock *so long as the stock was not transferred to a third person*." (Italics supplied.)

That case was an action in assumpsit by the administrator of a decedent who, at the time of her death on August 31, 1930, owned shares of the capital stock of defendant bank. About May 8, 1933, it appeared that decedent's estate was insolvent. Decedent being indebted to the bank on several notes, semi-annual dividends declared by the bank after May 8, 1933, were not paid to the administrator but were retained and credited upon the indebtedness, the bank claiming a statutory lien on the dividends.

The Banking Code of May 15, 1933, P. L. 624, sec. 704, 7 PS §819-704, substantially reënacts the provisions of the latter portion of section 21 of the Act of 1876 and specifically provides that a shareholder who is liable to the bank for any obligation which is overdue and unpaid shall not be entitled, as a matter of right, to receive any dividends on his shares so long as such obligation remains overdue and unpaid, but such dividends may be retained by the bank to discharge such obligation. However, this

section does not affect the right of a shareholder who is indebted to the bank to transfer his share or shares.

Both Josiah Howard and John T. Howard in due form and as provided by the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, sec. 1, 15 PS §301, transferred their title to the certificates of stock in Cameron County Bank and the shares represented thereby. They each delivered the certificates endorsed in blank, together with a separate power of attorney properly executed. This was a sufficient transfer, and it was not necessary for either West Branch National Bank or Susquehanna Trust Company, or their respective successors, to have the stock transferred on the books of Cameron County Bank in order to pass title to the certificates of stock or the shares represented thereby: Soltz v. Exhibitors' Service Co. et al., 334 Pa. 211, 215, in which the Supreme Court, referring to section 1 of the Uniform Stock Transfer Act of 1911, held that "neither statute nor decision . . . requires transfer on the books of the corporation to pass title".

Plaintiffs succeed to the rights of West Branch National Bank and Susquehanna Trust Company and hold the certificates of stock pledged by Josiah Howard and John T. Howard as pledgees and bona fide holders thereof for value. However, neither West Branch National Bank, Susquehanna Trust Company, Lycoming Trust Company, nor Lycoming Securities Corporation ever presented the certificates to Cameron County Bank for transfer and, from the facts agreed upon by the parties, it appears that it was not until August 10, 1937, that plaintiffs notified defendants these certificates were held by plaintiffs as pledgees. The stock is still registered in the stock book or register records of Cameron County Bank in the respective names of Josiah Howard and John T. Howard.

Subsequent to the loans made to Josiah Howard and John T. Howard by West Branch National Bank and Susquehanna Trust Company, Josiah Howard became in-

debted to Cameron County Bank in the sum of $3,000, which is still due and owing, and John T. Howard became indebted to the bank in the sum of $6,695, which is still due and owing.

This indebtedness was incurred prior to June 27, 1927, when Cameron County Bank discontinued business and, under an agreement with First National Bank of Emporium, Pa., transferred its accounts to the latter, which paid the liabilities of Cameron County Bank and delivered to defendants, as liquidating trustees, all the unconsumed assets of Cameron County Bank. These assets have been administered by defendants who have, according to the agreed facts, declared a "dividend" of $15 on each share of the outstanding stock of the bank. This represents a payment upon the stock standing in the name of Josiah Howard of $900, and the stock standing in the name of John T. Howard of $105, and defendants take the position that they are entitled to retain this money and apply the same against the indebtedness of Josiah Howard and John T. Howard to Cameron County Bank.

This distribution is not a payment pro rata of profits or earnings. It is a distribution pro rata to the shareholders of Cameron County Bank of moneys received by defendants from the liquidation of the assets of the bank. Is it a "dividend" within the meaning of section 21 of the Act of May 13, 1876? If so, is there a statutory lien thereon under the Act of 1876, notwithstanding the fact that title to the certificates and the shares represented thereby was transferred in due form to the pledgees of Josiah Howard and John T. Howard, since the shares themselves were never transferred upon the stock books of Cameron County Bank and, so far as appears from the agreed facts, the bank never had notice of any pledge, nor did defendants have such notice until August 10, 1937? Do defendants, as liquidating trustees, have the right to regard the ownership of this stock as vested in the persons whose names appear from the stock books of the bank as holders thereof?

The word "dividend", in its ordinary acceptation, means a distribution among the shareholders of a corporation of profits or surplus funds set apart by resolution of the board of directors in such manner as to be segregated from the property of the corporation and become the property of the shareholders. Ordinarily it means a sum set apart by the corporation from its profits to be divided among its shareholders. However, in its wider meaning, it is a portion of the principal or profits divided among the respective owners thereof.

Section 21 of the Act of 1876 refers to "any dividend, interest or profit on such shares." We hold that these terms are synonymous and that the dividend, interest, or profit there referred to means a dividend declared out of profits or net earnings upon the shares of stock and not a distribution among the shareholders of the principal assets of the bank, accumulated in the liquidation of its assets.

This view is confirmed by the provisions of section 16 of the Act of 1876, which authorized the directors to declare "a dividend of so much of the net profits of such corporation [bank] as they shall judge expedient . . ."

The substantial reënactment thereof in the Banking Code of 1933 provides specifically for the payment of dividends out of undivided profits and for the method of determining the net earnings of a bank.

Mr. Justice Roberts, in a majority opinion of the United States Supreme Court defining the meaning of the word "person" in an act of Congress, used the expression "the more natural inference" arising from the act in construing the significance of that word, and stated:

"Our function ends with the endeavor to ascertain from the words used, construed in the light of relevant material, what was in fact the intent of Congress."

The words used in section 21 of the Act of 1876 are "dividends, interest and profits", and section 16 of that act authorizes the declaration of a dividend out of "net profits of such corporation." "Construed in the light of

relevant material", viz, the agreed facts, we hold that "in fact the intent" of the legislature in enacting the Act of May 13, 1876, was that the word "dividend", or the expression "dividends, interest and profits", should be construed as a distribution of "net profits" or "net earnings", and that "the more natural inference" arising from the use of those words is that such distribution was not intended to be one of principal assets.

Plaintiffs and their predecessors have at no time been debtors of Cameron County Bank. They acquired title to the certificates of stock and the shares represented thereby for value received, and are bona fide holders thereof. They could at any time have required transfer of the shares of stock upon the books of Cameron County Bank, notwithstanding the fact that their debtors, Josiah Howard and John T. Howard, were also indebted to Cameron County Bank. While the shares are registered in the names of the Howards, yet title thereto passed in legal form to the predecessors of plaintiffs and is now vested in plaintiffs, who must be held to be the present owners thereof.

The question involved is not whether plaintiffs or their predecessors could have required the transfer of the shares to them notwithstanding the fact that the Howards were indebted to the bank, but whether the bank has a right of set-off.

While set-off is only applicable under the Defalcation Act of 1705, 1 Sm. L. 49, 12 PS §601, where the parties to the action have mutual and independent debts or claims arising out of separate and distinct contracts against each other, yet the broader equity principles of set-off are available to defendants where there is a special equity to be subserved and no equity of third parties will be injured. However, there was no right of action arising out of a contract or debt at any time in this case by the parties or their predecessors against the other, and none of the parties was at any time indebted to the other. Therefore, as between plaintiffs and defendants, no right of

set-off exists. There is no special equity available to defendants to be subserved. On the contrary, if the set-off claimed by defendants were allowed, the rights and equity vested in plaintiffs would be injured. Plaintiffs are the owners of the certificates of stock in question and the shares represented thereby and, as such, are entitled to the proportionate share represented by the certificates of any distribution of the assets of Cameron County Bank, notwithstanding the indebtedness of the Howards to Cameron County Bank.

Therefore, after consideration of the agreed facts and the law applicable thereto, the court makes the following

### Conclusions of law

1. Plaintiffs are the owners of the certificates of stock and the shares represented thereby originally issued to Josiah Howard and John T. Howard.

2. The dividend of $15 declared by defendants on each share of the outstanding stock of Cameron County Bank is not a dividend within the meaning of sections 16 and 21 of the Act of May 13, 1876.

3. Defendants do not have a statutory lien upon the distribution or payment of $15 on each share of the outstanding stock of Cameron County Bank.

4. Defendants do not have the right to set off the payment of $15 on the shares of the capital stock of Cameron County Bank registered in the names of Josiah Howard and John T. Howard against the indebtedness of Josiah Howard and John T. Howard to Cameron County Bank.

5. The costs of this proceedings shall be paid by defendants.

### Decree

And now, April 7, 1941, upon consideration of the foregoing case, it is hereby ordered, adjudged, and decreed as follows:

1. That judgment be and it is hereby directed to be entered in favor of plaintiffs and against defendants for the sum of $1,005.

2.  That the costs of this proceeding shall be paid by defendants.

3.  The Prothonotary of Cameron County is directed to file this opinion, enter the foregoing decree nisi, give notice to the parties or their counsel of record as provided by the Rules of Equity Practice in Pennsylvania and, unless exceptions are filed to this decree nisi within 10 days after such notice, this decree shall be entered as a final decree by the prothonotary.