## Wyckoff v. Clark et al.

Before Aponick, Lewis and Pinola, JJ.

*J. J. Blewitt*, for petitioner.

*Benjamin R. Jones, Jr.*, contra.

PINOLA, J., March 15, 1951.—We have before us a petition for declaratory judgment filed under the Act of June 18, 1923, P. L. 840, 12 PS §831, to determine the right of petitioner, Frank Wyckoff, to convey certain real estate to Willard Clark and Genevieve Clark, his wife.

On June 18, 1895, Frank Wyckoff and Belinda Wyckoff, his wife, became the owners by deed, as tenants by the entirety, of property known as No. 14 Milton Street, in the City of Pittston, Luzerne County, Pa. They continued to hold that property until January 10, 1950, on which date Belinda Wyckoff died under circumstances which led to the indictment of her husband on a charge of murder. At the trial, on October 2, 1950, the district attorney withdrew the charge of murder and upon a plea of guilty to manslaughter petitioner was sentenced by the court to pay the costs of prosecution, to pay a fine of $100, and to undergo imprisonment in Luzerne County Prison for a minimum of five years and a maximum of 12 years.

On December 1, 1950, Frank Wyckoff entered into a contract in writing to sell and convey the property to Willard Clark and Genevieve Clark, his wife. He stands ready and willing to convey it to them, in accordance with the terms and conditions of the contract, but the vendees refuse to accept conveyance or transfer

of the property, insisting that as the surviving husband he cannot convey a good title to the property because under the Act of August 5, 1941, P. L. 816, sec. 5, 20 PS §3441-3456, one half of the property passed to the estate of Belinda Wyckoff and the other half is held by him for life only, and will, upon his death, pass to the estate of Belinda Wyckoff.

Belinda Wyckoff died testate, and under her will Frank Wyckoff, being alive at the expiration of three months from the date of her death, became entitled to all of her estate.

If we exclude Frank Wyckoff as "slayer", under the Act of 1941, supra, Belinda Wyckoff left to survive her four grandchildren, namely, Mary Frances Mecca, Francis J. McNulty and John J. McNulty, children of a deceased daughter, Marie V. McNulty, and Francis Wyckoff, a minor, the child of a deceased son, John Wyckoff.

Several questions have been raised:

1. Does the Act of 1941 operate retroactively?

2. If it does, is it constitutional?

3. If it operates retroactively, does it not constitute an attainder?

In our opinion the Act of 1941 does not operate retroactively, and therefore, does not govern the agreement of sale between the parties.

The purpose of the act is to regulate and limit the rights of a slayer in real and personal property and in the benefits from insurance policies arising out of or as a result of the death of the person slain.

Section 1 defines "slayer" as "any person who participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person".

Section 2 provides:

"No slayer shall in any way acquire any property or receive any benefit as the result of the death of the

decedent, but such property shall pass as provided in the sections following."

Section 3 provides that as to intestacy distribution, the slayer shall be deemed to have predeceased decedent as to property which would have passed to the slayer.

Section 4 is similar to section 3 in regard to devises or legacies which would have passed to the slayer.

Section 5 covers tenancy by the entirety and provides as follows:

"One-half of any property held by the slayer and the decedent as tenants by the entirety shall pass upon the death of the decedent to his estate, and the other half shall be held by the slayer during his life, subject to pass upon his death to the estate of the decedent."

Under sections 4 and 5, although Frank Wyckoff is the sole beneficiary of his wife, Belinda Wyckoff, and is a tenant by the entirety, if the statute applies, his interest in the property would be greatly diminished and his rights therein curtailed.

While the language of the act is of general scope and might refer to any property held by the entirety after the passage of the act regardless of when it was acquired, the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 56, 46 PS §556, expressly provides that:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

This is but declaratory of the existing law, for long ago, in Taylor v. Mitchell, 57 Pa. 209, Sharswood, J., had said (p. 211):

"There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature."

In Commonweath ex rel. v. Greenawalt, 347 Pa. 510, the question involved was whether an act which became effective May 24, 1923, and authorized the sale

of real estate held by husband and wife by entirety to enforce payment of an order for the support of a wife or child applied to an estate by entirety which was created on April 2, 1923. Justice Drew declared (p. 512) :

". . . It is a sound and well-settled principle of statutory construction that no law shall be construed to be retroactive unless clearly and manifestly so intended: Painter v. B. & O. R. R. Co., 339 Pa. 271; Farmers N. Bk. & Tr. Co. v. Berks Co. R. E. Co., 333 Pa. 390, 393; Taylor v. Mitchell, 57 Pa. 209. Cf. Article IV, Section 56, of the Statutory Construction Act of May 28, 1937, P. L. 1019. Where the language of the statute is general, and might be given both retroactive and prospective operation, it will under this principle be held to be prospective only: Horn & Brannen Co. v. Steelman, 215 Pa. 187; Sproul v. Standard Glass Co., 201 Pa. 103; Peoples Fire Ins. Co. v. Hartshorne, 84 Pa. 453. This rule is especially applicable where a retroactive construction will either destroy or impair vested rights, and includes a prohibition against laws which, while operating upon events taking place in the future, divest rights, particularly property rights, which were vested anterior to the time of the enactment of such law: Crawford on Statutory Construction, §278. . . ."

In Monroe Loan Society v. Morello, 160 Pa. Superior Ct. 418, 421, the court, in construing an amendment (Act of May 28, 1937, P. L. 989) to the Small Loans Act, said:

"The 1937 amendment was enacted after the execution of the note in suit, and it contains no provision clearly manifesting a legislative intent that it shall operate retroactively. Statutory Construction Act of May 28, 1937, P. L. 1019, §56, 46 PS §556. A retroactive statute must always be strictly construed. Id. §58(2), 46 PS §558. Verbs in the past tense cannot of themselves render a statute retrospective, though

their use in connection with the word 'heretofore' might have that effect. 59 C. J., Statutes, §691. Moreover, since the effect of construing the amendment retroactively would render void, not only the judgment, but also contracts which heretofore had been held valid as to the principal and interest, the constitutional prohibition against the impairment of the obligation of contracts would be impinged. Const., Article 1, §17. Where two constructions can be placed upon a statute, one of which will render it constitutional and the other unconstitutional, the former construction must be invoked. Fid.-Phila. Trust Co. v. Hines, 337 Pa. 48, 10 A. 2d 553; Martin v. Danko, 143 Pa. Superior Ct. 106, 18 A. 2d 324. It follows that where a retroactive construction would impair the obligation of a contract, the statute must be held to operate only prospectively. . . ."

Applying these principles to this very act, in Moore's Estate, 50 D. & C. 183, Judge Sando concluded:

"Such an intention (to have this statute construed retrospectively) is not made manifest by the Act of 1941."

And so he held that the act was inapplicable to an intestate interest in a decedent's estate which had vested prior to its passage.

We have scanned the act very carefully and we find nothing in it to take it out of the general rule of construction that it is prospective only.

That being so, we must next ascertain whether there is anything in the law, apart from this statute, that affects this contract of sale.

In Alles v. Lyon, 216 Pa. 604, husband and wife owned a property as tenants by the entirety. The question was what effect, if any, did a divorce have upon that tenancy. Chief Justice Mitchell declared (p. 608):

". . . the parties took an estate by entireties at the time of the grant. By it the husband took a vested estate to which was incident a right of survivorship.

That estate could not be divested, or stripped of any of its incidents except by express statutory provision *existing at the time of its inception*. The divorce severed the unity of person for the future but it could not avail retrospectively to sever the vested unity of title and possession." (Italics supplied.)

In Hamer v. Kinnan, 16 D. & C. 395, by deed dated May 18, 1927, John S. Kinnan and Hattie S. Kinnan, his wife, became the owners of real estate as tenants by the entirety. They continued to hold in that tenancy until the death of Kinnan's wife. He was convicted of murdering her. The court said:

"The theory of the law is that both husband and wife were seized of the entire estate before the commission of his crime and before the death of his wife, and that the law fixes no penalty of forfeiture for defendant's crime."

It then quoted from Beihl v. Martin, 236 Pa. 519, 522, as follows:

" 'Fundamentally the estate rests on the legal unity of husband and wife; it is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same. Each is seized of the whole estate from its inception, and upon the death of one, while the right of survivorship remains to the other, *that other takes no new title or estate.*' " (Italics supplied.)

And declared (p. 396):

"The defendant in the case at bar is not claiming any property of his wife either by will or under the intestate law; but he does claim the real estate which was acquired, during the lifetime of his wife, by them as tenants by the entirety. It has been uniformly held by appellate courts in all the other states, so far as we are informed, that where land is conveyed to husband

and wife to hold by entirety, the survivor, upon the death of the other, takes and becomes vested of the entire estate—a fee simple—by virtue of the grant or deed conveying the property to them; the interest of the deceased being terminated by his or her death."

Continuing, Judge Langham said:

"We cannot read into the Acts of 1917 (Wills Act and Intestate Act) any legislative intent to break down the law of entireties as cited herein, much as we would like personally so to do in this case."

With all that we agree and we consider it applicable here.

Counsel for the vendee argues that if the act does not operate retroactively, since section 15 of the Act of 1941 declares that it "shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own wrong, wherever committed", the court should, under its general equity powers, create a constructive trust to prevent petitioner from obtaining any benefit whatsoever as the result of his crime.

While this proposal had a supporter in Justice Kephart, who expressed himself forcefully in a dissenting opinion in Tarlo's Estate, 315 Pa. 321, the same argument had been rejected by the court in Carpenter's Estate, 170 Pa. 203.

We do not agree with counsel because, like a statute operating · retroactively, any attempt to take petitioner's property from him by such a device would run afoul of the Constitution of Pennsylvania, article I, sec. 9, which declares:

"In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

Furthermore, because his estate was vested at the time of the crime, the legislature could not take away that property under the Constitution of Pennsylvania, section 18 of which provides:

"No person shall be attainted of treason or felony by the legislature."

And, under section 19, which provides:

"No attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth. . . ."

That being so, how could any court justify a similar result even if it had the power to bring it about?

We are satisfied that, under the law, Frank Wyckoff has the power and the right to convey the property in question, and our conclusion that the Act of 1941 does not operate retroactively obviates the necessity of considering the other questions involved.

Since we are not obliged to pass upon the constitutionality of the Act of 1941, it is immaterial that the Attorney General was not served with a copy of these proceedings as required by section 11 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §841: Day v. Ostergard, 146 Pa. Superior Ct. 27.

Accordingly, we enter the following

### Decree

Now, March 15, 1951, it is ordered, adjudged and decreed:

1. That Frank Wyckoff is the holder of the legal title in fee simple to property No. 14 Milton Street, Pittston, Pa.;

2. That he is entitled to performance by Willard Clark and Genevieve Clark of their undertaking contained in agreement dated December 1, 1950; and

3. The costs of these proceedings are to be paid by defendants.