345 A.2d 623

**In re ESTATE of Ralph H. MATHAY.**

**Appeal of Mr. and Mrs. Howard McMILLAN.**

Supreme Court of Pennsylvania.

Argued Oct. 8, 1974.

Decided Oct. 3, 1975.

488

Michael Halliday, Greenville, Frank Mast, Pittsburgh, Yates Mast, State College, for appellants.

William J. Joyce, Cusick, Madden, Joyce, McKay & Associates, Sharon, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

This is an appeal by Mr. and Mrs. Howard McMillan from a decree of the Orphans' Court in Mercer County, Pennsylvania, adopting the report of the auditor appointed by the court below and dismissing exceptions filed to the auditor's report. At the heart of the present contro-

versy is appellants' challenge to the abatement of certain real property specifically devised to appellants in the residuary clause of decedent Ralph H. Mathay's will and to the application of such property to the marital deduction gift bequeathed to decedent's surviving spouse. Appellants contend that the surviving spouse's priority and the abatement of their devise resulted from erroneous computation of the Federal Estate Tax Marital Deduction, incorrect interpretation of decedent's will, misapplication of the Pennsylvania law of abatement and overfunding of a support annuity. We disagree with these contentions and for reasons hereinafter discussed affirm the disposition of the lower court.

The facts leading to the present action are not in dispute. On January 10, 1959, decedent married Hazel Simpson Mathay. On March 25, 1960, following Hazel Mathay's filing for an absolute divorce, the Mathays executed a property settlement agreement to be effective only if a divorce decree was entered. In this agreement the decedent proposed to provide for the "sound and secure financial and economic future" of his ex-wife.

To effectuate this purpose the parties agreed to several transfers, the first of which being that the decedent would pay Hazel $2,500 in cash on execution of the agreement and deposit $22,500 in escrow with the First National Bank of Mercer County to be paid to Hazel Mathay upon entry of a valid divorce decree. In return, Hazel promised that she would vacate the Mathay household and remove certain household goods from an apartment belonging to the decedent. Further, and of particular concern in the present controversy, decedent agreed that he would pay his ex-wife the sum of $200 per month during her life "for her support, maintenance and general use" with the commitment to be binding on decedent's executors and administrators.

To guarantee these payments after the decedent's death, the 1960 agreement required that the executors or

administrators of the estate create an irrevocable trust in a recognized banking institute, with sufficient trust corpus to provide for the $200 monthly income. The agreement also specified that in determining the amount of the trust corpus the earnings were to be computed at four per cent per annum, and that the $200 payments were to be paid from earned interest with invasion being possible in the event the interest income was insufficient.

Lastly, and also of import to the current controversy, decedent promised that his estate would pay his ex-wife the sum of $25,000. A performance bond was given in connection with this last provision.

After the execution of this agreement, a divorce was granted. Thereafter, decedent married Dorothy Kibbe Mathay. On November 19, 1969, decedent died testate a resident of Mercer County, Pennsylvania. He was survived by his widow, Dorothy, a daughter Kathleen Mathay Ray and his ex-spouse, Hazel.

By his will dated December 29, 1967, the decedent devised a life interest in his residence and made certain other gifts of personalty to his widow. In addition, in item four of his will, the decedent provided for his wife as follows:

"I give and bequeath to my wife, Dorothy Kibbe Mathay, that portion of my estate equal to fifty per cent (50%) of the value of my adjusted gross estate as finally determined for Federal Estate tax purposes.

"My Executor shall assign, convey and distribute to my wife, the cash, securities and other property which shall constitute this bequest. No assets or proceeds of any assets shall be included in said bequest as to which a marital deduction is not allowable if included."

Item five of the will contained the following clause:

"I give and bequeath all of the rest, residue and remainder of may estate, of whatsoever kind and nature

and wheresoever situate, of which I shall die seized and possessed, or to which at the time of my death I may be entitled, in the following manner: . . . ." This "residuary" language preceded eight sub-paragraphs. The first two of these contained dispositions which fulfilled those 1960 covenants that were binding at decedent's death (namely that $25,000 cash be given to Hazel Mathay and a trust fund established for her). The sub-paragraph which created the trust for Hazel Mathay also provided for the disposition of the trust income and corpus in the event of Hazel's death.[1]

Thereafter, and still within item five, decedent listed certain specific gifts to be made to several different beneficiaries. Included in this listing was the devise of 211 Main Street, Greenville, Pennsylvania, to appellants.

On November 29, 1971, after the probate of the decedent's will the executor submitted a final accounting and proposed schedule of distribution.[2] On March 28, 1972, following an evidentiary hearing, the auditor filed a report containing a similar proposed schedule of distribution. For our purposes it is sufficient to note that there were insufficient assets to carry out all the terms of the decedent's will and that it was proposed that (1) the surviving spouse receive the property known as 211 Main

1. Upon the death of Hazel, the income from the trust was to be paid to his widow Dorothy for life and then to his daughter Kathleen for life. Upon his daughter's death, the trust fund was to be distributed to four named charities.

In light of the latter remainder interests, the Attorney General of the Commonwealth of Pennsylvania as parens patria for charitable interests was entitled to notice of the proceedings and an opportunity to intervene. Rule 5 Section 5 of the Orphans' Court Rules of Pennsylvania. Although notice was not timely given, the Attorney General, satisfied that the disposition below was correct as it affected the charitable interests involved and that such charities were well-represented, accepted tardy notice nunc pro tunc and chose not to intervene.

2. At the auditor's hearing all parties stipulated that this account was a first and partial account in that additional income had been received and distributed by both the executor and the First National Bank of Mercer County.

Street to satisfy her marital deduction gift, (2) the trust corpus, provided for in the 1960 divorce agreement, be funded in the amount of $60,000, and (3) although the 1960 agreement covenants be treated as binding obligations on the estate with priority over other testamentary dispositions—none of the $25,000 sum or the $60,000 trust fund be deducted from the decedent's gross estate for Federal Estate Tax purposes.[3] This last fact is of particular significance since any deduction of the 1960 agreement obligations from the decedent's gross estate would reduce the marital deduction gift bequeathed to decedent's widow and could consequently make abatement of appellants' devise unnecessary.[4]

Appellant took eight exceptions to the preceding distributional scheme. Since the issues raised are interrelated and since several exceptions restate the same objection, we have broken our discussion into four main areas.

1) Priority of gifts under the will

■ Appellants first argue that if the testator's gifts exceed the assets available for distribution, the law of abatement, as set forth in Section 751 of the Fiduciaries Act of 1949, April 18, P.L. 512, Article VII, Section 751 (20 P.S. § 320.751) entitles their specific devise to priority over the surviving spouse's general bequest. This contention is frivolous. Section 751 clearly provides that any general bequest has priority over any property devised or bequeathed in a residuary clause. *See Greenlee Estate*, 14 Pa.D. & C.2d 627 (O.C. Allegheny 1958) af-

3. In the filing of the Federal Estate Tax Return, Form 706, the executor chose alternate values, and the total gross estate as reported amounted to $214,466.91. This figure is not challenged. Deductions were listed in the amount of $17,558.27, which included funeral expenses, costs of administration and certain other debts, leaving an adjusted gross estate of $196,908.64. The executor computed the size of the gift under item four of the will as one-half of $196,908.64 or $98,454.32.

4. The property at 211 Main Street, Greenville, Pennsylvania, was valued at $20,000. This value is not contested.

firmed in 394 Pa. 144, 146 A.2d 286 (1958). *See also Heilman Estate,* 13 Pa.D. & C.2d 440 (O.C. Lehigh 1958). Just as clearly, item five of the will is a residuary clause, and appellants' devise is within that clause. Thus the appellants' devise was to be fulfilled only to the extent possible from assets *remaining* after satisfaction of all other non-residuary legacies, debts and administrative costs. *See Folwell Estate,* 12 Pa.D. & C.2d 552 (O. C. Montgomery 1957).

■ Appellants also assert the ill-founded proposition that decedent's provision at the end of his will for his residuary estate to bear the burden of all state inheritance taxes constituted a "general cash bequest" [to legatees "who would otherwise bear the burden of such taxes"] which must abate prior to appellant's specific devise. Stated otherwise, the surviving spouse must be taxed on a pro rata basis before the appellants' devise can abate. The Inheritance and Estate Tax Act of June 1961, P.L. 373, § 718, 72 Pa. S. § 2485–718 specifically provides that a decedent may assign taxes to whichever beneficiaries he wishes but that if no assignment is made and if there is a residuary estate, it must bear the burden of inheritance taxes. Thus even without testator's directive, the residuary legatees would bear the tax burden. *Woolett Estate,* 461 Pa. 703, 337 A.2d 837 (1975). *See Krogman Estate,* 40 Pa.D. & C.2d 462, 464–65 (O.C. Phila.1966).[5]

Here, testator made clear his intent to benefit the non-residuary legatees by requiring that all legatees be given their dispositions in full to the extent there was any residuary principal. It would be absurd to reduce a favored legatee's gift in order to pay taxes as appellants

5. We have held that even where the spouse is not statutorily entitled to a tax-free gift [see 72 Pa. S. § 2485–718(b) & (c)], where the testator specifically provides for such gift, the tax-free bequest does *not* amount to an additional gift to the extent of the tax. *Neamand Estate,* 456 Pa. 22, 318 A.2d 730 (1974); *see also Loeb Estate,* 400 Pa. 368, 162 A.2d 207 (1960).

suggest when such result would be against both the statutory tax scheme and the clear intent of this testator.

2) Computation of the Federal Estate Tax Marital Deduction

 "The law is well-settled that where a testator in his will gives specified property or a share of his estate in exact or substantial compliance with the terms of his obligations under an inter vivos property settlement (or separation) agreement made with his wife, *that wife is a creditor* of the estate and not a legatee under his will" and that consequently the wife's claim is superior to the claims of other legatees and devisees. *Zeitchick Estate*, 426 Pa. 171, 175, 231 A.2d 131, 133 (1967); *Pratt Estate*, 422 Pa. 446, 450, 221 A.2d 117 (1966) (and cases cited therein). Likewise, it is clear that a husband may assume a contractual obligation to his wife which will survive his death and bind his estate. *Ervin Estate*, 430 Pa. 431, 437, 243 A.2d 420 (1968); *Wolfsohn v. Solms*, 392 Pa. 129, 132, 139 A.2d 523 (1958). Nevertheless, the fact that a claim arising out of such an agreement is enforceable under state contract law is insufficient to establish that it was supported by fair and adequate consideration "in money or money's worth," as required for deduction from the gross estate under Federal Estate Tax provisions of the Internal Revenue Code.[6] *Estate of Davis*, 57 T.C. 833 (1972); *Estate of Rubin*, 57 T.C. 817 (1972). *See also Commissioner of Internal*

---

6. Section 2053 of the Internal Revenue Code, 26 U.S.C.A. This section states in pertinent parts:
 "(a) General rule—for purposes of the tax imposed by Section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts . . . (3) for claims against the estate . . . and (c)(1)(A) consideration for claim—the deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for adequate and full consideration in money or money's worth . . . ."

*Revenue v. Wemyss*, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958 (1944) ; *United States v. Righter*, 400 F.2d 344 (8th Cir. 1968).

Since the obligations of Ralph Mathay in favor of his former wife were undertaken in connection with and defined by a support agreement preceding their divorce, there is no question that Hazel Mathay has priority to receive her interest in the estate as a creditor under State law. What is at issue is whether and to what extent Hazel Mathay's claims may be considered debts that should be subtracted from decedent's assets in determining decedent's adjusted gross estate for Federal Estate Tax purposes.

■ ■ Since the burden is on the party seeking a deduction to establish that the deduction comes within the terms of the Internal Revenue Code [*New Colonial Ice Company v. Helvering*, 292 U.S. 435, 54 S.Ct. 788, 78 L. Ed. 1348 (1934); *White v. United States*, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172 (1938)], the appellants have attempted to prove that the debts of the estate to Hazel Mathay fall within the terms of Section 2053(a)(3). In making their assertion, the controversy has centered on the nature of the consideration given by Hazel Mathay, in exchange for the promises made by the decedent in the 1960 support agreement. *See* Section 2053(c)(1)(A).[7]

7. The Supreme Court in *Taft v. Commissioner of Internal Revenue*, 304 U.S. 351, 356, 58 S.Ct. 891, 82 L.Ed. 1393 (1937), while tracing the history of Section 303(a)(1) of the Revenue Act of 1926, the predecessor of Section 2053(c)(1)(A), pointed out that it was the evident purpose of Congress, in its successive changes of this provision of the Code, to narrow the class of deductible claims. In the case of *Carney v. Benz*, 90 F.2d 747, 749 (1st Cir., 1937), the First Circuit stated that "things which [this section] was intended to disallow were colorable family contracts and similar undertakings made as a cloak to cover gifts" or testamentary distributions. Only those claims exchanged for "the kind of consideration which in an arm's length business transaction provides the transferor of property with the full value thereof, . . . and . . . if the consideration is not paid in money, property or services, but is represented by some benefit, then the benefit must be of the *equivalent money value* in order

Relying on Section 2043(b) of the Internal Revenue Code, 26 U.S.C.A.[8] Dorothy Mathay has argued that decedent's promise to make payments to Hazel Mathay at death were exchanged for Hazel Mathay's promise to relinquish her rights as a surviving spouse or heir of his estate and that, this being the case, Hazel's consideration was not in "money or money's worth." Appellants, on the other hand, contend that the consideration given by Hazel was the relinquishment of support rights and that, this being the case, Section 2043 is not applicable.

Unfortunately, this dichotomy is an oversimplification. Admittedly, the Commissioner of Internal Revenue has recently recognized that the relinquishment by a wife of "support rights," in contrast to "inheritance rights"[9], in an agreement incident to divorce may constitute a con-

to constitute the required 'adequate and full consideration,'" under the Statute. *Estate of Goetchius*, 17 T.C. 495, 503 (1951) (and cases cited therein).

As the Tax Court later reiterated in the *Estate of Tiffany*, 47 T.C. 491, 500 (1967), Congress intended to permit deductions only of claims "to the extent that they were contracted for a consideration which at the time either augmented the estate of the decedent, granted him some right or privilege he did not possess before, or operated to discharge a then existing claim, such as breach of contract or personal injury." It was with this in mind that the Tax Court held "a claim against an estate for Federal estate tax purposes is not deductible merely because it is enforceable under State laws governing the validity of contracts. *Estate of Goldsmith*, 36 B.T.A. 1201, 1205; *Carney v. Benz*, [1 Cir.], 90 F.2d 747; *United States v. Mitchell*, [7 Cir.], 74 F.2d 571."

8. Section 2043(b) provides: "For purposes of this chapter a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

9. The difficulty in accepting the support of a spouse as a "marital right" is that the statute couples that phrase with that of dower and curtesy and that the stated Congressional purpose of Section 2043(b) was to avoid a particular form of estate tax avoidance which involved the contractual conversion of a wife's dower or any statutory claim as surviving spouse into a deductible claim against the gross estate. *See Estate of Glen*, 45 T.C. 323 (1966), 1 Merten's Law of Federal Gift and Estate Taxation, Section 5.21, pp. 145 *et seq.*

sideration in money or money's worth. [Rev.Rul. 68–379, 1968–2 Cum.Bull. 414. *See also* Rev.Rul. 60–160 1960–1 Cum.Bull. 374, *Estate of Watson*, 20 T.C. 386 aff'd, 216 F.2d 941 (2d Cir., 1954) and E.T. 19, 1946–2 Cum.Bull. 166.] [10] However, the Commissioner has found such rights to qualify as full and adequate statutory consideration for estate tax purposes only to the extent they are measurable under state law. Rev.Rul. 71–67, 1971–1 Cum.Bull. 271 (2 Fed.Est. & Gift Tax Rep. ¶ 8011 (1971)). *See also* 1 Merten's Law of Federal Gift and Estate Taxation, 1970 ed., Cumulative Annual Supplement Section 5.21. Thus whenever payments are to be made in exchange for "relinquished support rights," the value to be placed on such payments is to be measured in accordance with "the amount of alimony that would usually be awarded in a divorce action under the applicable state law on the applicable valuation date and giving consideration to all facts that would influence the amount of the award. . . ." 1 Merten's, *supra*, p. 147.[11]

■ This method of valuation creates an interesting situation in Pennsylvania where, generally, there is no continuing statutory obligation to pay support.[12] In

10. But compare *Estate of McKeon*, 25 T.C. 697 (1956) where the Tax Court in the Second Circuit held a wife's support right to be a "marital right" excluded under Section 2043(b) from constituting money or money's worth.

11. The case of *Sherman v. United States*, 462 F.2d 577 (5th Cir. 1972) relied on by appellants does not hold otherwise. In this case, monthly sums to be paid to the wife until her death or remarriage in accordance with a separation agreement were held to be exchanged for full and adequate consideration in "money or money's worth." However, in construing the separation agreement, the Court applied the law of Georgia which permits permanent alimony after divorce until the wife remarries.

12. In Pennsylvania, only where spouse is insane or suffering from serious mental disorder (Act of May 2, 1929, P.L. 1237, § 48, added 1972, Sept. 22, P.L. 880, No. 202, § 2; 23 P.S. § 48) or where a spouse obtains a divorce from bed and board (Act of May 2, 1929, P.L. 1237, § 47, 23 P.S. § 47) may alimony be granted following divorce.

the instant case, since there would be *no legal duty* to pay support on termination of the Mathay marriage, valuation in terms of "alimony" would be impossible. The fact is, since no *statutory* duty to pay support was relinquished, if the presently contested payments were in lieu of any "support rights," they were in lieu of that which the decedent felt *personally* obligated to pay.[13] Such a feeling of indebtedness, however, does not give rise to "bona fide contractual obligations" whose relinquishment enriches the estate or discharges an existing claim. With this in mind, it seems safe to assume such payments were not meant to qualify to any extent under Section 2053 of the Internal Revenue Code.[14]

The case that comes closest to confronting this issue is *Smith v. United States*, 277 F.Supp. 583 (M.D.Fla.1967). In the Smith case, the Florida District Court considered whether a claim by a decedent's widow that was based on a separation agreement incident to a Florida divorce action instituted by the husband was deductible. The Commissioner claimed that an ex-wife could give up no rights in consideration for transfers from her husband since under Florida law a wife against whom a divorce is granted cannot recover alimony. The Florida District Court, although recognizing the merit of this argument, concluded that since the Smith divorce resulted from collusion the preceding Florida law was inapplicable. Had the proper party, i.e. the wife, who was a resident of Ohio, been the plaintiff in the Florida divorce action, or

**13.** Under Pennsylvania divorce law, although Hazel Mathay did not have an alimony right, she did have the right to that portion of both personal and real property in which she had an ownership interest during marriage. [*See DiFlorido v. DiFlorido*, 459 Pa. 634, 331 A.2d 174 (1975)]. If the payments made to Hazel were in lieu of the return of such property, we would reach a different result. *Smith v. United States*, 277 F.Supp. 583, 591 (M.D.Fla.1967). Here, however, neither party nor the 1960 agreement itself suggests that any consideration (e. g. money, property or services) was given by the former wife other than the relinquishment of the right of support or inheritance.

**14.** *Cf.* footnote 7.

had she instituted a divorce action in Ohio where alimony is allowed, she would have had support rights. Therefore, the Court held there was adequate and full consideration for the husband's transfer to the extent of these rights.

In contrast, in the present case, there is no evidence that either spouse was ever a resident of another state or that either spouse ever contemplated bringing a divorce action elsewhere. It would thus seem we are limited by Pennsylvania law.[15]

Accordingly, having found that the discharge of the duty to support has only been recognized to qualify as statutory consideration to the extent the duty to support is an "obligation to the State" [16] and having found that, in this case, there was only a duty imposed by the parties themselves. We believe the present contested payments made in lieu of "support rights" do not qualify for federal deduction treatment. We, therefore, conclude that the marital deduction gift bequeathed to decedent's surviving spouse has been properly computed.[17]

15. Appellants have continued to maintain otherwise, relying on the case of *Tuckie G. Hesse,* 7 T.C. 700 (1946). The *Hesse* decision was based on Section 22k of the Internal Revenue Code (now 26 U.S.C.A. § 71) whose reported purpose was to produce uniformity in the treatment of support payments for *federal income tax purposes* regardless of the states' statutory differences concerning the existence and continuation of an obligation to pay alimony. No such purpose, however, is evident under the Federal Estate Tax Statute.

16. *See Smith v. United States, supra; Sherman v. United States, supra,* and *see also Estate of Glen, supra; Estate of Thompson,* 8 T.C. 1363 (1947) (memo), and *Estate of Mitchell,* 6 T.C. 159 (1946).

17. Where there is a statutory duty to support, the question of whether the amount of the claimed deduction is in excess of the wife's "reasonable support rights" also arises. Thus, in such cases it must be determined 1) whether the entire claim represents relinquished support; and 2) if the support payments are to "continue beyond the period of joint-lives, . . . whether the lifetime payments were less than that to which the wife would have been entitled under State law." Rev.Rul. 71–67 I.R.B. 1971–16, 37.

3) Funding of the testamentary trust in favor of Hazel Simpson Mathay

The agreement dated March 25, 1960 between Hazel Simpson Mathay and decedent as well as item 5b of decedent's will defines the corpus of the trust in favor of decedent's ex-spouse to be such an amount as the earnings therefrom, computed at four per cent per annum will produce $200 per month. Calculation of this amount yields $60,000. Nevertheless appellants contend that the proposed funding in the amount of $60,000 is excessive.

Their argument is based on Section 20.2031.7 of the Internal Revenue Estate Tax Regulations which deals with the computation of annuity funds by use of actuarial tables. By using the tables set forth in this section, the appellants submit that the proper corpus of the fund should be the sum of $19,890.02.

Although the sum arrived at by the appellants would enable the payment of $2400 to be made annually during the ex-spouse's life expectancy, there is no reason to believe that either spouse believed that Hazel would die within this period or, more importantly, that they contracted on the basis of her actuarial life. Rather it appears that payments were to be made to Hazel until the end of her natural life, however long it should last.

The fact that invasion was permitted should at some future time the earnings be insufficient was not an indication, as appellants suggest, that invasion such as is done in annuity funding was the intended result. This fact seems particularly clear since the trust income was

Were it necessary to consider these issues here, it would then be necessary to examine such factors as the amount of decedent's annual income, the extent of his assets and the relative ages of the Mathays as of March 25, 1960. *Commissioner of Internal Revenue v. Estate of Nelson*, 396 F.2d 519 (2d Cir. 1969). With this in mind, we are constrained to agree with the lower court, that even had we found that Section 2053 consideration passed in 1960, since evidence was not presented (or discernible from the 1960 agreement itself) regarding these factors of valuation, a deduction would not be granted.

to be distributed to future life interests and the corpus to then be distributed to certain named charities. Had the testator intended the dissipation of the trust at the theoretical time of death of an actuarial beneficiary, it is not likely that he would provide for this chain of future interests.

4) Disposition upon Hazel Simpson Mathay's death—

Neither the auditor nor the Court below determined the disposition to be made of the trust fund upon the death of Hazel Simpson Mathay. Under the proposed distribution schedules, an amount necessary to complete the trust fund of $60,000 is identified as the balance due under the March 25, 1960 agreement. All remaining assets were shown as available to decedent's surviving spouse for distribution under her marital deduction gift.

Appellants now ask the Court to determine their right to the property listed in item 5 of the will either presently or as a remainder in fee.

As we noted earlier, under the law of abatement, the surviving spouse was entitled to receive the property at 211 Main Street in partial fulfillment of her marital deduction gift. Since no other assets are presently available, it is clear appellant cannot now receive the equivalent in cash or other personal property.

Further, there appears no compelling reason for consideration of the remainder interests until the termination of Hazel Simpson Mathay's life interest. At that time, the trust fund balance will be returned to the estate and the executor will determine to whom the funds should go. All residuary legatees will then have an opportunity to file exceptions to any account filed in connection with any additional distribution.

Decree affirmed. Appellants to pay costs.