469 A.2d 987

**Wilma M. KRENZELAK, Appellee,**

v.

**Chester KRENZELAK and Stanley Krenzelak, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 1983.

Decided Dec. 13, 1983.

W. Bryan Pizzi, II, Rosenberg, Sewak & Pizzi, Washington, for appellants.

Robert L. Ceisler, Patrono, Ceisler, Edwards & Pettit, Washington, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellants, Chester Krenzelak and Stanley Krenzelak, appeal by allowance an order of the Superior Court which reversed an order entered by the Court of Common Pleas of Washington County. Common Pleas had sustained appellants' preliminary objections to a complaint in equity filed by appellee, Wilma Krenzelak. In her complaint, appellee sought nullification of a real estate conveyance from her estranged husband, Chester Krenzelak, to his son, Stanley, on the ground that the property transfer was effected solely to deprive appellee of her right to equitable distribution of marital property in a divorce action pending under the Divorce Code of 1980, P.L. 63, No. 26, § 101 *et seq.*, 23 P.S. § 101 *et seq.* (Supp. 1983–84).[1]

The sole question presented for our decision is whether the equitable distribution provisions of the 1980 Divorce Code may be applied to real estate transferred by one spouse prior to enactment of the Code, where the other spouse, who never had an interest therein, now seeks its inclusion as marital property. The Superior Court, on the authority of our decision in *Bacchetta v. Bacchetta*, 498 Pa.

---

1. The 1980 Divorce Code repealed and replaced The Divorce Law, Act of May 2, 1929, P.L. 1237, *as amended,* 23 P.S. § 1, *et seq.*

227, 445 A.2d 1194 (1982), determined that the provisions of the Code defining marital property and governing its disposition apply to the property at issue. We hold that *Bacchetta* does not control the instant case and, accordingly, reverse the Superior Court.

The property in question is a seventy-four acre tract located in Morris Township, Washington County which Chester Krenzelak purchased, in his name only, on January 29, 1968. Chester and Wilma were married at that time. Wilma, however, did not contribute to the purchase price of the land nor was the land ever titled in her name.

Chester filed an action for divorce against Wilma in April, 1978 and she filed a countersuit in April, 1979. On March 25, 1980 Chester conveyed the property for no monetary consideration to Stanley, his son by a prior marriage. The General Assembly enacted the Divorce Code of 1980 in April, 1980 and it became effective on July 1, 1980. The statute includes, *inter alia*, provisions for equitable distribution of property. 23 P.S. §§ 402–04. In January, 1981, Wilma petitioned Common Pleas Court to have her existing divorce action governed by provisions of the 1980 Code pursuant to Section 103 of the that Code [2]. Chester did not oppose the petition and Common Pleas granted permission to proceed under the Code. Thereafter, Wilma amended her original complaint in divorce to include a request for equitable distribution and other relief available under the new Code.

In March, 1981, Wilma filed this suit in equity to set aside the deed conveying the Morris Township property from Chester to his son contending that Chester transferred the property for a wholly inadequate consideration and for the

**2.** Section 103 provides in pertinent part:
> The provisions of this act shall apply to all cases, whether the cause for divorce or annulment arose prior or subsequent to enactment of this act. The provisions of this act shall not affect any suit or action pending, but the same may be proceeded with and concluded either under the laws in existence when such suit or action was instituted, notwithstanding the repeal of such laws by this act, or, upon application granted, under the provisions of this act.

23 P.S. § 103. *See also* Pa.R.C.P. 1920.92.

sole purpose of depriving her of her right to equitable distribution of marital property under the 1980 Code. Wilma further contends that the transfer is fraudulent under Section 403(d) of the new Code. Chester and Stanley filed preliminary objections to the complaint in equity in the nature of a demurrer and motion to strike maintaining that the complaint fails to state an actionable claim. Appellants argue that at all times prior to the transfer, the property in question was in Chester's sole ownership, that Wilma made no contribution to the purchase price and that, therefore, Chester had the right and authority to make the conveyance. Appellants further maintain that the conveyance is in no way affected by the Divorce Code of 1980 since it was not in effect at the time of transfer.

Common Pleas determined that although appellee's motion to have her pending divorce action governed by Section 103 of the 1980 Code had been granted, that Code's provisions for equitable distribution of marital property could not be applied retroactively to the date of filing of the pre-Code divorce proceeding. The Court reasoned that such retroactive application of the Code's provisions could impermissibly infringe on appellants' vested property rights in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. Consequently, the Court held that the concept of "marital property" as defined in the 1980 Code does not become operational until the date on which a divorce action is filed under the new statute. The Court further held that:

> [B]ecause the Code which created the concept of "marital property" did not take effect until July 1, 1980, the concept of "marital property" as a restriction on the alienability of vested property rights did not exist on March 25, 1980, the day defendant-husband transferred the property to defendant-son. Consequently, defendant-husband was free to transfer all of his interest in the property to whomever he wished on that date.

Common Pleas slip op. at 4 (October 7, 1981). Accordingly, Common Pleas sustained appellants' preliminary objections.

That decision came down before our opinion in *Bacchetta*, *supra*.

The Superior Court reversed on the basis of what it believed was a logical extension of *Bacchetta*, wherein this Court held that property acquired during the marriage of the parties, but before the effective date of the 1980 Code, is "marital property" subject to equitable distribution on termination of the marriage within the meaning of Section 401(e). *Bacchetta* did not involve property transferred to another before the Code's effective date. *See Id.*, 498 Pa. at 230–232, 445 A.2d at 1196. Since appellee was granted leave to proceed under the new Code pursuant to Section 103, the Superior Court concluded that all provisions of the new enactment must apply to her divorce action. 307 Pa.Superior Ct. 499, 502, 453 A.2d 998, 999 (1982). In reaching this conclusion, the court cited several provisions of the new Code. Specifically, it referred to Section 401(c) which confers full equity power and jurisdiction on the Court of Common Pleas in all matrimonial cases, including the power to grant relief "against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause." The Superior Court further noted that Section 401(e)(5) defines marital property subject to equitable distribution as "all property acquired by either party during the marriage" and that excluded from this definition is property which "a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced." 23 P.S. § 401(e)(5).

The court then held that, as the property at issue was conveyed gratuitously and after both appellant-husband and appellee had filed their pre-Code divorce actions, the property is "marital property" within the meaning of Section 401(e). 307 Pa.Superior Ct. at 503, 453 A.2d at 999–1000. Finally, the court observed that appellee seeks to have the conveyance set aside pursuant to Section 403(d) which deems fraudulent and void "[a]ny encumbrance or disposition of property to third persons who had notice of the

pendency of the matrimonial action or who paid wholly inadequate consideration for such property." 23 P.S. § 403(d). While recognizing that disposition of the case on the merits is within the province of the trial court, the Superior Court concluded that the fact that the lower court necessarily would be required to apply Section 403(d) retroactively, did not bar the action:

> While this case proceeds a step forward from *Bacchetta* in that it involves a third party who now purports to own the property, this Court perceives no reason to withhold retroactive application of a provision in the Divorce Code from this situation which may involve the divesting of property rights of appellee-son.

307 Pa.Superior Ct. at 503, 453 A.2d at 1000 (1982).

Contrary to the view of the Superior Court, we find good reason not to apply the equitable distribution provisions of the 1980 Code to defeat the vested property rights of a transferee who is not a party to the divorce action where he acquired those rights prior to the enactment and effective date of the Code.

 At the outset we note that, "[n]o statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926 (Supp.1982–83). *See also Misitis v. Steel City Piping Co. et al.*, 441 Pa. 339, 342, 272 A.2d 883, 884 (1971); *Commonwealth ex rel. v. Greenawalt*, 347 Pa. 510, 512, 32 A.2d 757, 758 (1943); *Commonwealth v. Griffin*, 189 Pa.Superior Ct. 59, 62, 149 A.2d 656, 658 (1959), *cert. denied*, 365 U.S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747 (1961). Furthermore,

> [w]here the language of the statute is general, and might be given both retroactive and prospective operation, it will under this principle be held to be prospective only: *Horn & Brannen Co. v. Steelman*, 215 Pa. 187 [64 A. 409]; *Sproul v. Standard Glass Co.*, 201 Pa. 103 [50 A. 1003]; *Peoples Fire Ins. Co. v. Hartshorne*, 84 Pa. 453. This rule is especially applicable where a retroactive construction will either destroy or impair vested rights, and includes a prohibition against laws which, while oper-

ating upon events taking place in the future, divest rights, particularly property rights, which were vested anterior to the time of the enactment of such law: Crawford on Statutory Construction, § 278.

*Commonwealth v. Greenawalt,* 347 Pa. at 512, 32 A.2d at 758. *See also Rupert v. Policemen's R. & P. Fund,* 387 Pa. 627, 632, 129 A.2d 487, 489 (1957).

■■■ The 1980 Code itself is silent on the matter of retroactive application of its provisions. Similarly, a review of its legislative history reveals that the legislature did not address the precise question presented here. Section 401(e)(5) does lend some support to Superior Court's view that the legislature intended to protect prior rights of only *bona fide* purchasers for value and that, therefore, Section 403(d) reaches other pre-enactment transfers of spousal property under the principle of statutory construction expressed in the Latin maxim *inclusio unius est exclusio alterius.* We decline to apply that maxim and find such an intent because of the constitutional problems it would pose. Instead, we prefer to apply the well-settled principles that this Court should not decide a constitutional question unless absolutely required to do so, *Mt. Lebanon v. County Board of Elections, etc.,* 470 Pa. 317, 322, 368 A.2d 648, 650 (1977), and that in ascertaining legislative intent, we must presume that the legislature did not intend to violate either the Constitution of the United States or that of this Commonwealth. 1 Pa.C.S. § 1922(3) (Supp.1983–84).

The 1980 Code introduced the concept of "marital property" into the law. That concept restricts the alienability of property held by a spouse solely in his or her own name. As such, it is a sharp departure from our pre-existing law.[3]

---

3. Prior to the enactment of the 1980 Code, on divorce a spouse had property rights only in that real and personal property in which he or she had an ownership interest during the marriage. *Estate of Mathay,* 463 Pa. 486, 499 n. 13, 345 A.2d 623, 630 n. 13 (1975). The fact that, in a property settlement, a financially disadvantaged spouse was not entitled to a share of any assets held in the other spouse's name is a principal reason the new Code was enacted. *Taddei v. Taddei,* 299 Pa.Superior Ct. 318, 324, 445 A.2d 773, 776 (1982); *Snaith v. Snaith,* 282 Pa.Superior Ct. 450, 457, 422 A.2d 1379, 1383 (1980).

The property at issue in this case was transferred from appellant-husband to appellant-son prior to the enactment of the Code and, accordingly, at a time when "marital property" did not exist in our state. Neither the Code itself nor its legislative history convinces us that the Legislature intended the new concept of "marital property" to encompass property conveyed by a spouse to a third party prior to the Code's enactment.

If the Legislature had intended the Code's provisions for equitable distribution to govern the disposition of property conveyed before its effective date, we would be constrained to hold that retroactive application of the Code under such circumstances deprives appellant-son of his property without due process of law in violation of both the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution.[4] The latter provision is substantially equivalent to the federal due process clause, *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 590, 55 A.2d 521, 526 (1947), and states that:

> All men ... have certain inherent and indefeasible rights, among which are those of ... acquiring, possessing and protecting property....

Retroactive application of new legislation will offend the due process clause if, balancing the interests of both parties, such application would be unreasonable. *See Chase Securities Corporation v. Donaldson*, 325 U.S. 304, 315–16, 65 S.Ct. 1137, 1142–43, 89 L.Ed. 1628 (1945); *Valladares v. Valladares*, 80 App.Div.2d 244, 250–251, 438 N.Y. S.2d 810, 815 (1981), *aff'd*, 55 N.Y.2d 388, 449 N.Y.S.2d 687, 434 N.E.2d 1054 (1982). *See generally* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 694–95 (1960). Traditionally, retrospective laws which have been deemed reasonable are those which " 'impair no contract and disturb no vested

---

4. Aware as we are of *Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), it is this Court's express intent to rest today's holding on Pennsylvania law.

right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.' " *Smith v. Fenner,* 399 Pa. 633, 641, 161 A.2d 150, 154 (1960) (quoting *Barnesboro Borough v. Speice,* 40 Pa.Superior Ct. 609, 612 [1909] ). *See also Costa v. Lair,* 241 Pa.Superior Ct. 517, 520, 363 A.2d 1313, 1314 (1976).[5]

In *Bacchetta* we held that Section 401(e), the equitable distribution provision of the Code, applies to all property acquired during the marriage without regard to the Code's effective date and that the provision so construed represents a permissible regulation of the marital relationship pursuant to the State's police power. There we emphasized the remedial nature of the Code and recognized that to construe the equitable distribution provision otherwise would serve to frustrate the goal of curing the injustice suffered on divorce by an economically disadvantaged spouse.

Specifically, we observed that:

[T]he stated purpose of the new Divorce Code is to deal effectively with the "realities of the matrimonial experience" by giving "primary consideration to the welfare of the family," "mitigat[ing] the harm to spouses and their children caused by the legal dissolution of the marriage," and effectuating "economic justice" as well as "a fair and just determination and settlement of . . . property rights."

5. Some jurisdictions have abandoned the vested rights theories in determining the constitutionality of retroactive legislation and, instead, consider three factors which must be weighed in any particular case:

(1) The nature and strength of the public interest served by the statute in question;

(2) The extent to which the statute impairs a right secured under pre-existing law; and

(3) The nature of the right so impaired.

*See Valladares v. Valladares,* 80 App.Div.2d at 250–251, 438 N.Y.S.2d at 815; Hochman, *supra,* at 697. Retroactive application of Section 403(d) of the 1980 Code would be unconstitutional under both the traditional and modern approaches. However, in analyzing Section 403(d), we have adhered to the established approach which, in fact, takes into account the above considerations.

23 P.S. § 102(a). Where, as here and in most cases for years to come, the parties were married before the enactment of the Divorce Code, it would be unreasonable to interpret the Divorce Code as providing for equitable distribution of only that property acquired after the Code's effective date. Such an interpretation would impose the unmanageable burden on courts and litigants of determining which properties were acquired before, and which after, the effective date of the Code. Such an interpretation would also substantially deny the benefits of the Divorce Code to spouses in marriages in existence at the time of the Code's enactment, thereby prolonging for at least a generation the very inequity the Legislature sought to remedy.

*Id.* 498 Pa. at 231, 445 A.2d at 1196. *See also Rothman v. Rothman,* 65 N.J. 219, 222–223, 320 A.2d 496, 498 (1974).

We noted further that equitable distribution does not affect property rights during marriage but only occurs on divorce and then only when necessary to cure economic injustice. *Id.,* 498 Pa. at 227, 445 A.2d at 1198. In *Rothman,* the New Jersey Supreme Court faced the precise issue which confronted our Court in *Bacchetta.* In upholding retroactive application of New Jersey's equitable distribution statute to property acquired before its effective date, the Court explained that:

No interest in property is taken from one person and transferred to another by the language of the enactment. Only if a person becomes party to a proceeding for divorce, and so more directly subject to the police power of the state, does the statute even have potential relevance.... [N]o change in property rights will occur except upon the entry of a judgment of allocation, which must by its terms be "equitable." This loss or impairment is indeed slight when balanced against the probable benefit to the public welfare inherent in the legislation.

*Id.* 65 N.J. at 229–230, 320 A.2d at 502. *See also Kujawinski v. Kujawinski,* 71 Ill.2d 563, 575–576, 17 Ill.Dec. 801, 806, 376 N.E.2d 1382, 1387 (1978). Other jurisdictions con-

sidering this issue have emphasized the fact that equitable distribution laws merely serve to expand the relief available on divorce under pre-existing law and have recognized that the earlier statutes did not confer vested rights on spouses prior to divorce.[6] Accordingly, the courts in these states have concluded that the procedures for property division prescribed by the equitable distribution statutes are remedial in nature and do not offend constitutional principles. *See, Valladares v. Valladares,* 80 App.Div.2d at 252–253, 438 N.Y.S.2d at 816; *Fournier v. Fournier,* 376 A.2d 100, 102 (Me.1977).[7]

 The State's police power, pursuant to which it regulates private rights in the public interest, is far-reaching. *See Hadacheck v. Sebastian,* 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348 (1915); *Commonwealth v. Barnes & Tucker,* 472 Pa. 115, 127, 371 A.2d 461, 467,

**6.** For example, in Pennsylvania under pre-Code law, a divorced spouse was entitled to permanent alimony only if insane or suffering from a serious mental disorder, Act of May 2, 1929, P.L. 1237, § 45, *as amended,* or upon obtaining a divorce "from bed and board". *Id.* at § 46. *See also Estate of Mathay,* 463 Pa. at 498 n. 12, 345 A.2d at 630 n. 12. These limited marital rights, naturally, vested only upon divorce. They did not affect conveyances made prior to the commencement of the action unless the transfers were fraudulent as to a "creditor" under the common or statutory law of fraudulent conveyances. The unamended complaint before us does not allege that the transfer at issue is fraudulent under the law in effect prior to the enactment of the 1980 Divorce Code.

**7.** In applying equitable distribution statutes to property acquired prior to the effective date of legislation, several courts have asserted that, in so doing, they are, in fact, applying such laws prospectively. This notion derives from the fact that any impairment of property rights occurs only on termination of marriage and that divorce, on which equitable division of property is contingent, necessarily post-dates enactment of the distribution laws. *See Rothman v. Rothman,* 65 N.J. at 231–232, 320 A.2d at 503; *Addison v. Addison,* 43 Cal.Rptr. 97, 104, 43 Cal.Rptr. 97, 104, 399 P.2d 897, 904 (1965). However, this reasoning ignores the impact which equitable distribution statutes have on rights in "pre-enactment" property. *See Re Marriage of Bouquet,* 16 Cal.3d 583, 128 Cal.Rptr. 427, 546 P.2d 1371 (1976). The better-reasoned view is that retroactive application of equitable distribution provisions was sanctioned in these cases because the importance of the public policy considerations embodied in the statutes outweighed any countervailing private property interests. *See Valladares v. Valladares,* 80 App.Div.2d at 250–251, 438 N.Y.S.2d at 815.

(Barnes & Tucker II), *appeal dismissed,* 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). Yet the police power, like every substantive power exercised by the states, is circumscribed by the due process clause. *See Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922). As Mr. Justice Holmes observed in *Pennsylvania Coal Co. v. Mahon:*

> Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of diminution. When it reaches a certain magnitude, in most if not all cases, there must be an exercise of eminent domain and compensation to sustain the act.

*Id.* at 413, 43 S.Ct. at 159. Accordingly, " '[a] statute ... that should take the property of one person and give it to another, or to the public, without making just compensation therefor ... would be ... unconstitutional and void.' " *Willcox v. Penn Mutual Life Ins. Co.,* 357 Pa. at 591, 55 A.2d at 526 (quoting *Durkin v. Kingston Coal Co.,* 171 Pa. 193, 199, 33 A. 237, 238 (1895).

This Court delineated the scope of the State's power to regulate property rights incident to the marital relationship in *Willcox,* 357 Pa. at 592, 55 A. at 527:

> "The relation of husband and wife is ... formed subject to the power of the State to control and regulate both that relation and the property rights *directly connected with it,* by such legislation *as does not violate those fundamental principles which have been established for the protection of private and personal rights against illegal interference.* [*Baker's Executors v. Kilgore,* 145 U.S. 487, 491, 12 S.Ct. 943, 944, 36 L.Ed. 786 (1892).] ... [P]roperty rights ... *arising solely by reason of the*

*marriage,* are within legislative control." [*Scaife v. McKee,* 298 Pa. 33, 39, 148 A. 37, 39 (1929).]
(Emphasis in original.)

Applying the foregoing principles to the case now before us, it is obvious that this case differs from *Bacchetta* in several significant respects. First, *Bacchetta* was a divorce action involving only the spouses. In this case, neither of the spouses now owns the property in controversy. Stanley Krenzelak, who currently holds title to the Morris Township tract, is not a principal party to Chester and Wilma Krenzelaks' respective divorce actions. Moreover, unlike the marital property rights at issue in *Bacchetta,* which vest only in the event of divorce under the 1980 Code, Stanley Krenzelak's rights in the property in question vested prior to enactment of the Code and are only tangentially, if at all, connected with a marital relationship, *i.e.,* that of his father and stepmother. Accordingly, Stanley's property rights do not arise "solely by reason of the marriage" of Wilma and Chester Krenzelak nor are they directly connected with that marriage. Furthermore, Stanley's rights in the Morris Township property will not be merely diminished, altered or impaired should Section 403(d) be given retroactive effect. Rather, if the trial court found the conveyance fraudulent under the provision, his rights would be entirely extinguished.

■ Finally, retroactive application of Section 403(d) is not crucial to the effective administration of the Code's provisions or to the implementation of the policy objectives which the Code is designed to achieve.[8] The limited public

**8.** We do not hold that Section 403(d) is unconstitutional when applied *prospectively.* Indeed, prospective application of the provision is necessary to protect the economic rights established by the Code. Moreover, under pre-existing law, fraudulent conveyances could be set aside in order to protect marital rights. It would be anomalous to construe an act designed to cure economic injustice on divorce as abrogating pre-enactment remedies. *See Hofmann v. Hofmann,* 94 Ill.2d 205, 68 Ill.Dec. 593, 446 N.E.2d 499 (1983). We hold only that as Section 403(d) materially alters the vested property rights of third persons, we will not *per se* apply it retroactively to conveyances which

purpose served by allowing retroactive application of Section 403(d) in the few instances where such application will be required does not warrant divestiture of the property rights of Stanley Krenzelak or those persons similarly situated.

On these considerations we hold that retroactive application of Section 403(d) to conveyances completed before the effective date of the 1980 Divorce Code would violate the due process rights of third party transferees guaranteed under the United States and Pennsylvania Constitutions and, therefore, such application would be unconstitutional. Accordingly, appellants' preliminary objections to appellee's complaint in equity should have been sustained and the complaint dismissed without prejudice to appellee's right to amend. For these reasons, we vacate the order of Superior Court and remand the record to the Court of Common Pleas of Washington County for further proceedings consistent with this opinion.

NIX, J., files a concurring opinion.

FLAHERTY, J., files a concurring opinion in which LARSEN, J., joins.

NIX, Justice, concurring.

The opinion of Mr. Justice Hutchinson accurately frames the issue as being "whether the equitable distribution provisions of the 1980 Divorce Code [Act of April 2, 1980, P.L. 63, No. 26, § 101 *et seq.*, 23 P.S. § 101 *et seq.* (Supp.1983–84) ("Code")] may be applied to real estate transferred by one spouse *prior to* [the] enactment of the Code, where the other spouse, who never had an interest therein, now seeks its inclusion as marital property." (p. 376) That opinion also correctly concludes that a finding of the applicability of section 403(d) of the Code to this property would offend due process. My concern arises from the analysis which attempts to distinguish the majority view expressed in *Bac-*

were completed prior to the enactment and effective date of the 1980 Code.

*chetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982) rather than candidly acknowledge the error of that decision. Such an approach will invite a series of future lawsuits requiring the development of further distinctions of the *Bacchetta* principle until it becomes evident that view was ill-advised *ab initio.* The error of the majority in *Bacchetta,* if not initially recognized, should now be evident and acknowledged.

I

In *Bacchetta* a majority of this Court held that the equitable distribution requirement of the Code would not be limited to marital property acquired after the effective date of that enactment. Over the strong dissent of three members of this Court the majority justified this grant of retroactivity, although the language of the Code did not expressly mandate it, by arguing:

Where, as here and in most cases for years to come, the parties were married before the enactment of the Divorce Code, it would be unreasonable to interpret the Divorce Code as providing for equitable distribution of that property acquired after the Code's effective date.

498 Pa. at 231, 445 A.2d 1196.

The majority's impatience to satisfy the newly perceived concept of fairness between parties in a marital relationship ignored the unfairness to the spouse who was being divested of property rights that had vested under prior law, without due process. As cogently noted by Mr. Justice Flaherty, joined by Mr. Justice Larsen:

By construing the Code as rendering such prior-acquired property subject to equitable distribution, thereby according 23 P.S. § 401(d)–(f) a retroactive rather than merely prospective effect, vested property rights existing before the Code's effective date could be abrogated by a court decree transferring property unconditionally owned by one spouse to the sole ownership of the other. Likewise, a spouse's interest as a joint tenant, or tenant by the entirety, could be extinguished by being transferred to

the other spouse. Prior to the Code's effective date, the statutory and common law of the Commonwealth governed the status of spouses' assets upon divorce. Hence, propertied spouses seeking to protect assets against loss upon divorce relied upon the expectation that property would remain as it had been legally titled. (Citation omitted)

498 Pa. at 240, 445 A.2d at 1201.

## II

Today the consequences of *Bacchetta* have been avoided by the recognition of the due process rights of bona fide third party transferees. Nonetheless this Court has still refused to recognize the right of due process to a spouse in such a situation. The retroactive application of a concept of "marital property" which results in divesting vested property rights of one of the spouses in favor of the other is counter to the very heart of our notions of due process.

As I attempted to emphasize in my dissent in *Bacchetta*, 498 Pa. at 236, 445 A.2d at 1199, my quarrel is not with the adoption of a concept of "marital property" or any other legislative judgment designed to adjust more equitably the status of spouses. Rather it is directed at judicial intrusion which accelerates a scheme in such a fashion that clearly offends traditional notions of due process.[1]

1. I fully appreciate that property rights are not absolute and that the public may regulate in the common interest. *Prune Yard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). However, that regulation must be in conformity with due process.

 The relation of husband and wife is ... formed subject to the power of the state to control and regulate both that relation and the property rights directly connected with it; by such legislation as does not violate those fundamental principles which have been established for the protection of private and personal rights against illegal interference.

 *Executors v. Kilgore,* 145 U.S. 487, 491, 12 S.Ct. 943, 944, 36 L.Ed. 786 (1892)

 The admittedly serious concern that a party to a failing marriage not be unjustly treated in the dissolution of the relationship may be addressed by providing alimony, support and maintenance. Legislation may also be enacted providing for a common ownership by a present or future spouse in property acquired by the other member to

## III

The uniqueness of the marital relationship justifies special responsibilities and obligations to be borne by those who choose to enter that state. However, it must also be remembered that one can only enter into such a relationship voluntarily if he is apprised of the consequences of such a decision. From time to time it is to be expected that there must be a reassessment of those responsibilities and obligations to accommodate ever occurring societal change. The Code as drafted by the General Assembly reflects a proper response to such a reassessment.[2] Unfortunately, by judicial interpretation a retroactive application was engrafted which improvidently transformed a reasonable accommodation into an impermissible derogation of fundamental individual rights. Today we had the opportunity to acknowledge that error and we have failed to seize it.

FLAHERTY, Justice, concurring.

As set forth by Mr. Justice Nix in his concurring opinion, this case illustrates the unsoundness of affording §§ 401(e, f) of the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26 § 101 et seq., 23 P.S. § 401(e, f), retroactive application. I

the relationship after the effective date of the enactment. *See Wilcox v. Penn Mutual Life Insurance Co.,* 357 Pa. 581, 55 A.2d 521 (1947). There is no question that due process, as we have defined it, permits a remedy against a potential injustice to an ill-treated spouse.

The constitutional concern is raised by an attempt to retroactively divest vested property rights of one of the spouses in favor of the other. Regardless of the laudatory purposes sought to be achieved, such a means offends well recognized constitutional mandates. Where one voluntarily enters into a marital relationship and is aware that such a step may affect ownership in property acquired thereafter, the decision to undertake such a step is a knowing and voluntary one. Here the retroactive application forces an involuntary divestment of property rights without due process of law. *Bacchetta v. Bacchetta,* 498 Pa. 227, 237–238, 445 A.2d 1194, 1199–1200, (1982) (Nix, J. dissenting).

2. Viewed prospectively the "marital property" concept would apply to marital property acquired after the effective date of the Code. Thus, those contemplating marriage would be aware of their position, and property acquired by persons presently married after the Act's effective date will be acquired under circumstances where the spouses are aware of the consequences of such an acquisition.

continue to adhere to the view expressed in my dissenting opinion in *Bacchetta v. Bacchetta*, 498 Pa. 227, 238–244, 445 A.2d 1194, 1200–1202 (1982), that as the legislature did not clearly and manifestly *express* an intent that property acquired prior to the effective date of the Code be classified as "marital property" and subjected to the equitable distribution provision of the Code, the application of § 401 is prospective only. Although the constitutional difficulties are obvious, it is not necessary to reach the question of the constitutionality of the retroactive application of § 401, as does Mr. Justice Nix, as there are ample reasons to support the inescapable conclusion that the expressed legislative intent was that application of § 401 is to be *prospective only*. Thus, I concur in the result.

LARSEN, J., joins this concurring opinion.