## Commerce Bank v. Bello

*Lloyd R. Persun* and *Maria P. Cognetti,* for plaintiffs.

*LeRoy Smigel* and *Susan E. Lederer,* for defendant Carmela Bello.

*Leslie D. Jacobsen,* for defendant Robert Bello.

DOWLING, *J.,* February 21, 1991—On October 8, 1985, defendant Robert Bello executed two assignments of Real Estate Purchase Agreements in favor of plaintiff, Commerce Bank. The assignments constitute mortgages of the equitable title of the properties described in the purchase agreements and

secured payment of the indebtedness of Robert's Jewelry Center Inc., t/a Robert's New York Diamond Exchange, evidenced by a collateral note in the principal amount of $100,000 plus interest and a guaranty agreement. The assigned realty consisted of two adjacent properties with one dwelling, being purchased by Mr. Bello in his name only under two installment sales contracts with the seller, one purchased before the marriage in 1981 containing the dwelling and the other without improvements purchased in 1984 during the marriage. Carmela Bello has resided on the property since her marriage to Mr. Bello. It appears Bello has not lived there since December 1984, when the parties separated.

The proceeds of the collateral note were used in the corporations's jewelry business which was apparently profitable until 1988, when the corporation sought bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. The corporation and Mr. Bello defaulted on the collateral note and the guaranty agreement, and Commerce filed complaints in mortgage foreclosure against Mr. and Mrs. Bello. Mr. Bello never answered or otherwise pleaded to the complaints. Judgments in mortgage foreclosure by default were entered against Robert Bello on April 20, 1990 in favor of Commerce in the amount of $66,272.71 plus interest. On April 30, 1990, Mrs. Bello filed answers to Commerce's complaints in mortgage foreclosure, alleging that she had no knowledge of the assignments by Mr. Bello or of the loan of money by Commerce to Robert's Jewelry Center Inc. and that her marital interest in the property should not be subject to the assignments.

When Robert Bello executed and delivered the assignments to Commerce in October 1985, no divorce proceeding was pending between Mr. and Mrs. Bello, that action not being commenced until

July 5, 1990. In that proceeding, Mrs. Bello claimed that the divorce master could divest Commerce's security interest in the property as part of a property settlement agreement between the spouses. Commerce disagreed and petitioned to intervene in the divorce proceeding, seeking to protect its mortgage lien on the equitable interest in the property. Mrs. Bello opposed Commerce's intervention.

Hearing on Commerce's petition was held on November 27, 1990, at the conclusion of which Commerce withdrew its request to intervene on the condition that the court adjudicate the issue of its lien priority in the mortgage foreclosure actions on its motion for summary judgment. The court consolidated the mortgage foreclosure actions for purposes of decision.

Any marital interest claimed by Mrs. Bello in the property is derivative in nature, as she has no title of record to the property independent of her relationship to her husband. As such, she cannot encumber or convey the property. Although the individual creditors of Mrs. Bello could not reach the property of Mr. Bello, the creditors of Mr. Bello were free to attach his property. *Iscovitz v. Filderman,* 334 Pa. 585, 6 A.2d 270 (1939). Likewise, Mr. Bello was competent during the marriage to encumber the property owned in his own name without the joinder of his wife. *Cancilla v. Bondy,* 353 Pa. 249, 44 A.2d 586 (1945).

When Robert mortgaged the interest in the property on October 8, 1985 in favor of Commerce,[1]

---

1. An assignment of an equitable interest in the property under the real estate purchase agreement constitutes a mortgage as a matter of law in Pennsylvania. *Russell's Appeal,* 15 Pa. 319 (1848); *Rhines v. Baird,* 41 Pa. 256, 262-3 (1861); *Frederick & Lewisburg Building Association v. Corcoran et al.,* 100 Pa. 413 (1881).

section 401(e)(7) provided in relevant part:

"(e) For purposes of this chapter [Property Rights] only, 'marital property' means all property acquired by either party during the marriage *except:*

"(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, *prior to the time proceedings for divorce are commenced.*" 23 P.S. §401(e). (emphasis supplied)

Mr. Bello assigned the equitable interest in the property to Commerce and also gave his personal guaranty in exchange for a $100,000 loan by Commerce to the corporation, which he owned. Mrs. Bello has not alleged and has not presented any evidence of bad faith. She did not commence divorce proceedings against her husband until July 5, 1990, almost five years after he had made the assignment. Under the clear wording of section 401(e)(7) in effect on October 8, 1985, Commerce's rights in the equitable interest in the property vested on October 8, 1985, and the equitable interest represented by Commerce's mortgage is not marital property.

Mrs. Bello alleges that she paid $2,500 of the down payment from her funds. Even if she contributed to the purchase price down payment, and even if she can overcome by clear, explicit, and unequivocal evidence the presumption of a gift that arises in transactions between spouses,[2] that fact would not alter or impair Commerce's mortgage. *Mermon v. Mermon,* 257 Pa. Super. 228, 232, 390 A.2d 796, 799 (1978); Restatement (Second) of Trusts, §442. See, 21 P.S. §601, which provides:

_____

2.  Mrs. Bello never contended that she did not intend a gift. She presented no evidence to rebut the presumption of her giving the down payment to Mr. Bello. She in fact testified that she "gave" him the money (Tr. 23, 24).

"Whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of a legal title in the name of another, if the person advancing the purchase money has the capacity to contract, such resulting trusts shall be void and of none [sic] effect as to bona fide judgment or other creditors, or mortgagees of the holder of the legal title, or purchasers from such holder without notice unless either (1) a declaration of trust in writing has been executed and acknowledged by the holder of the legal title, and recorded in the recorder's office of the county where the land is situated, or (2) unless an action of ejectment has been begun, in the proper county, by the person advancing the money, against the holder of the legal title." Accord, *Penn Mutual Life Insurance Co. v. Finkel,* 428 Pa. 11, 235 A.2d 396 (1967); *Barrish v. Flitter,* 715 F.Supp. 692 (E.D. Pa. 1989).

Section 401(e)(7) was amended on February 12, 1988 to exclude from the definition of "marital property" that property encumbered in good faith for value "prior to the date of final separation." 23 P.S. §401(e)(7). The date of final separation of Mr. and Mrs. Bello is irrelevant to the issue in this case because the amendment of the statute must be construed as effective on the date of enactment—February 12, 1988. See 1 Pa.C.S. §1953, which provides as follows:

"Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be

construed as effective from the time of their original enactment, and *the new provisions shall be construed as effective only from the date when the amendment became effective.* " (emphasis supplied)

No statute is construed to be retroactive unless clearly and manifestly so intended by the General Assembly. 1 Pa.C.S. §1926; *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983), and cases cited therein.[3]

If statutory language is general and could be construed as prospective or retroactive, it will be applied prospectively only, especially when retroactive application impairs any right which vested prior to enactment. *Krenzelak, supra.* Retroactive application of a statute or an amendment thereto is *presumed* not to have been intended by the legislature if such application alters the substantive rights of parties to a pre-existing contract. *Rudolph Rosa v. Latrobe Brewing Co.,* 347 Pa. Super. 551, 562, 500 A.2d 1194, 1200 (1985).

---

3. The heinousness inherent in making laws effective retroactively was an element very much in the minds of the Founding Fathers when they included the prohibition (article I, section 9, subsection 9) in the federal Constitution against all "ex post facto" laws. The authors of this august document were guided by their long historical memories, which ran to such gems of jurisprudence as Henry VII's decision, in 1485, to prosecute all of the followers of Richard III, whom Henry had defeated and killed at the Battle of Bosworth. Henry simply back-dated his own reign to the day *before* Bosworth, and then attempted to indict Richard's men on a charge of high treason. This action (fortunately blocked by the House of Commons) led a contemporary to exclaim in despair: "Oh, God! What security are our kings to have henceforth in the day of battle if their loyal followers may in defeat be deprived of life, fortune and inheritance!" We may likewise wonder how stable contracts would be if later laws were held to have the power to rewrite or annul them.

The *Krenzelak* court determined that the legislative history was silent on the issue of retroactive application of the code's provisions. The court concluded:

"Neither the code itself nor its legislative history convinces us that the legislature intended the new concept of 'marital property' to encompass property conveyed by a spouse to a third party prior to the code's enactment." *Krenzelak, supra.*

Similarly, the Pennsylvania Superior Court in 1990 concluded that the legislative history reveals a clear intent that the substantive rights of a third-party mortgagee *not* be impaired upon divorce of the mortgagor. *Kronz v. Kronz,* 393 Pa. Super. 227, 574 A.2d 91 (1990). Thus, the code does not authorize the court "to alter the rights of secured creditors merely to aid in effecting an equitable distribution of marital property between the spouses."

The courts have applied Divorce Code provisions retroactively only if the property rights at issue belong to the husband and wife, not third parties like Commerce. See e.g., *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982); *Nuttall v. Nuttall,* 386 Pa. Super. 148, 562 A.2d 841 (1989).

Accordingly, we enter the following

## ORDER

And now, February 25, 1991, plaintiff's motion for summary judgment is granted and judgments in mortgage foreclosure are entered in favor of plaintiff.